In the Matter of the Administration of the goods and chattels of BENJAMIN CURSER, deceased.

The provision of the act of 1867 in reference to the authority and jurisdiction of surrogates (§ 2, chap. 782, Laws of 1867), which provides that a married woman shall be capable of acting as an administratrix and of receiving letters as such the same as if unmarried, did not repeal the provision of the Revised Statutes (2 R. S. 74, §. 28), giving a preference in the granting of administration to unmarried over married women of equal degree of kindred.

The said act frees the married woman from pre-existing disabilities and so can have effect without disturbing the statutory order of appointment, and the two enactments are not necessarily inconsistent.

Accordingly *held* where a surrogate issued letters of administration to one of two sisters who was unmarried, without notice to the other, who was married, that the provision of the Code of Civil Procedure (§ 2662) requiring notice to every person having a prior or equal right did not apply and that the appointment was valid.

*In re Curser* (25 Hun, 579) reversed.

*West* v. *Mapes* (4 Redf. 496), overruled.

(Argued May 30, 1882 ; decided June 13, 1882.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made the second Monday of December, 1881, which reversed two orders of the surrogate of Westchester county, one of which denied the petition of S. Cecelia Baxter asking for the revocation of letters of administration before that issued to Martha E. Varian, as sole administratrix of the estate of Benjamin Curser, and for the issuing of joint letters to the said petitioner and said Martha E. Varian; the other refused to grant joint letters. The order of General Term also vacated and set aside the letters so granted.    (Reported below, 25 Hun, 579.)

The two applicants were sisters and the only surviving children of the deceased.

*Isaac N. Cook* for appellant.    Section 2 of chapter 728 of the Laws of 1867 did not repeal the preference declared in 2 R. S. 74, chap. 6, title 2, art. 2, § 28.    (Code of Civil

Procedure, §§ 2660, 2662; *Cobb* v. *Beardsley*, 37 Barb. 192; 2 Bliss' Code, 647; 2 Black. Com. 496, 504, 505; 2 Kent's Com. 411, 412, 414 [12th ed.]; *Tonnele* v. *Hall*, 4 N. Y. 144; 1 Black. Com. 59; *Barnes* v. *Underwood*, 47 N. Y. 359; *Van Rensselaer* v. *Snyder*, 9 Barb. 302; *Brown* v. *Lease*, 5 Hill, 221; *McCarte* v. *Orphan Asylum Soc.*, 9 Cow. 437–506; *Williams* v. *Porter*, 2 Barb. 320; Dwarris, 672, 676 *b*.) A construction which repeals another statute should be very clear, and especially is this true when the repeal is a part of a statute and it seriously mars the harmony of a system. (*Hayes* v. *Symonds*, 9 Barb. 260; *People, ex rel. Kingsland*, v. *Palmer*, 52 N. Y. 83; *Smith* v. *People*, 47 id. 330; *Mongron* v. *People*, 55 id. 613; *Powers* v. *Shepard*, 48 id. 541; *Davis* v. *Fairbairn*, 3 How. [U. S.] 636; *Wallace* v. *Bassett*, 41 Barb. 92; *Mayor of New York* v. *Walker*, 4 E. D. Smith, 258; Potter's Dwarris, 154, 155, 157, n.; 1 Kent, 521, 523, 524; *Cobb* v. *Beardsley*, 37 Barb. 192; Code of Civil Procedure, §§ 2660, 2662.) The discretion of electing to appoint as administrator one or more of those equally entitled belongs to the surrogate, and it is his prerogative. (3 Blackstone, 496, 504, 505; 2 Kent, 411, 412, 414; 1 Barb. Ch. Pr. 45; 2 Caine's Cases, 143; 2 Brad. 207; Code of Civil Procedure, § 2666; *Tilton* v. *Beecher*, 59 N. Y. 176.)

*Odle Close* for respondent. An unmarried woman has no prior right over a married woman to letters of administration on the property of a deceased person where both are of the same degree of kindred. (2 R. S., chap. 4, part 2, § 27, tit. 2; id., chap. 6, part 2, title 2, § 32; Laws of 1867, chap. 782, § 2; *West* v. *Mapes*, 4 Redf. 496; Redfield on Law and Practice of Surrogate's Court, 299.)

FINCH, J. The surrogate issued letters of administration to one of two sisters, who was unmarried, without notice to the other, who was a married woman. If the two had in all respects an exactly equal right, notice to one was an essential requisite to a valid appointment of the other. (Code, § 2662.)

But if the provision of the Revised Statutes establishing pref-
erences among those of equal degree of kindred to the intestate,
as males to females, relatives of the whole blood to those of
the half blood, and unmarried to married woman (2 R. S.,
title 2, part 2, chap. 6, § 28), remains unrepealed and in force, the
appointment was valid, and notice to the married sister un-
necessary.   So much of the provision referred to as gives a
preference to the *feme sole* is claimed to have been repealed by
the act of 1867 relating to the authority and jurisdiction of
surrogates.   (Chap. 782.)   The second section provides that a
married woman shall be " capable " of acting as administratrix
and " receiving " letters as such as though she was unmarried,
and that her bond given on such appointment shall be valid
and effectual.   There is in this act no express repeal of the
previously existing preference, and if it is so repealed at all it
is by implication.   That is the conclusion of the General Term
in this case, and supported by the similar ruling of the surrogate
of New York.   ( *West* v. *Mapes*, 4 Redf. 496.)   But a repeal
by implication must rest upon very clear and definite reasons.
(*People, ex rel. Kingsland*, v. *Palmer*, 52 N. Y. 83; *Mongeon* v.
*People*, 55 id. 613.)   It must be the necessary solution of an in-
consistency not otherwise to be solved.   If the two statutes,
on any reasonable construction, can stand together, and if the
later enactment has scope to operate, and an apparent purpose
of its own, without working a repeal of the earlier provision,
both must be upheld and harmonized.   The law of 1867 had
such scope and purpose.   Under the Revised Statutes the
married woman could not be administratrix.   She was classed
among the incapables.   (2 R. S., 75, § 32.)   And where
her relationship to the intestate would otherwise have given
her the right, it went to her husband.   Undoubtedly this was
one of the results flowing from the theory which merged her
existence in his, and narrowed or denied her separate rights.
The later legislation which gradually invested her with the
control of her own property, and recognized her independent
existence, left no reason for retaining in the law her incapacity
to act as administratrix.   The old theory loosened its hold

slowly.   The act of 1863 took the next step.   (Chap. 862, § 4.)
It made her capable of such appointment "with the written
consent of her husband."   So that when the act of 1867 was
passed it found two disabilities remaining and two difficulties
needing to be removed.   Accordingly, it enabled the married
woman to act as administratrix as if she was unmarried,
thus dispensing with the condition of her husband's con-
sent, and made her bond valid and effectual.   The act, there-
fore, had scope for its operation, and purposes to accomplish
without touching the existing preference.   We are not
compelled to refer it to that for lack of other subject on
which it could operate.   Nor is it necessarily inconsistent
with such preference.   It is an enabling act.   It deals with
the capacity of the married woman to act as administratrix
and receive letters as such.   It frees her from disabilities,
and its language is satisfied and its apparent aim reached
without disturbing the statutory order of appointment.   The
two enactments can stand together and are not necessarily in-
consistent.   The married woman is freed from every disability
affecting her capacity to act as administratrix.   She is made
just as capable of so doing, even to the giving of bonds, as her
unmarried sister, but when choice is to be made between the
two the preference is with the latter.   That preference does
not affect or modify the equal capacity of the married woman
to act as administratrix and to receive letters.   It creates and
assumes such equality, but chooses between the two as equally
capable, and of equal degree of kindred, giving a preference
of appointment to the unmarried woman.   It is not difficult to
discover reasons for the choice.   The possible influence of the
husband over the wife in respect to the administration, and his
interference through that influence, would be apt occasionally
to provoke difficulty and hostility on the part of the actual
relatives, viewing his suggestions or demands as the meddling
of a stranger in blood; and his own action would not always
be moulded and shaped in accordance with that natural affec-
tion and confidence which usually exists between those of the
same blood.   The change in the rights and capacity of the wife

removed many of the reasons for the preference of the statute but did not destroy them all. It is, therefore, a significant fact that the act of 1867 contained no express repeal of such preference. It professedly dealt with the relations and capacity of the married woman in a case of intestacy. The general subject was under consideration. Provisions of the Revised Statutes relating to it were some amended and some repealed. That under the circumstances of such legislation the statute giving the preference was not directly repealed indicates that it was not intended to be. We think the two enactments are not so necessarily inconsistent or repugnant as to warrant us in declaring a repeal by implication.

The order of the General Term should be reversed and those of the surrogate affirmed, with costs.

All concur, except TRACY, J., absent.

Ordered accordingly.