no authority for such a proposition. The reports of the court of appeals are filled with declarations, especially in negligence cases, that the general term might have granted a new trial on the facts, but that no such power existed in that court. And this, not on the ground that no motion to direct a verdict had been made or no exception taken, but because the question was one of fact, and not of law. In nearly all the cases where it has been held that a scintilla of evidence was not sufficient to uphold a verdict, the proof has been a matter of inference. If one were sued civilly for the conversion of goods which it was alleged he had stolen, the fact that he had been at the place from which the goods were stolen about the time of the larceny would, doubtless, be some evidence of the fact that he had taken the goods. But, in the absence of other incriminating evidence, it would be insufficient to support a verdict against him. So, also, even in the case of direct evidence, the testimony of a witness may be in such contradiction of matters of common knowledge or the laws of nature as to be incredible, as a matter of law. Such evidence is suggested by Judge Haight in Re Harriot's Estate, 145 N. Y. 540, 40 N. E. 246. So, in People v. Evans, 40 N. Y. 1, it was held, as a matter of law, that the uncorroborated testimony of a confessed perjurer was insufficient to justify the conviction of the defendant on a charge of suborning that perjury. In these cases, and doubtless in others that might be suggested, a verdict would be properly directed. But where one or two competent witnesses testify to facts not incredible, which, if believed by the jury, would entitle the party to a verdict, the party cannot be deprived of his right to go to the jury because the witnesses who contradict his evidence are more numerous. The only remedy to the party aggrieved is to move to set aside the verdict, if it is rendered perversely against the weight of evidence.

The motion for reargument should be denied, with $10 costs. All concur.

_____

(10 App. Div. 560.)

IRVINE v. ATLANTIC AVE. R. CO.

(Supreme Court, Appellate Division, Second Department. December 8, 1896.)

1. STREET RAILROADS—UNAUTHORIZED SIDING TRACKS—INJUNCTION.
   The owner of property abutting on a public street may sue to enjoin the unauthorized construction and maintenance by a street-railway company of a siding track for its cars on the opposite side of the street.

2. SAME—AUTHORITY OF COMMON COUNCIL.
   Brooklyn City Charter (Laws 1888, c. 583) tit. 16, § 2, subd. 5, vesting in the department of parks exclusive power to determine the location of railroad tracks placed on streets bounding on public parks did not abrogate the authority of the common council, conferred by the general railroad law, to determine in the first instance whether the tracks should be placed on such streets or avenues.

Appeal from special term, Kings county.

Action by William Irvine against the Atlantic Avenue Railroad Company to enjoin defendant from maintaining a side track as a standing place for cars on the east side of the street, on which plaintiff's

premises abutted, directly opposite, on the west side. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

James R. Soley, for appellant.

Hugo Hirsh, for respondent.

CULLEN, J. The plaintiff is the owner of land on the westerly side of Ninth avenue, in the city of Brooklyn, comprising the whole front of the block between President and Carroll streets. The defendant maintains and operates upon that avenue a double-track street-surface railroad. In August, 1894, the defendant was relaying its main tracks on the avenue, and at that time constructed a turnout or siding, as a standing place for cars, opposite the plaintiff's premises, but on the other, or easterly, side of the avenue. The plaintiff thereupon instituted this action to enjoin the maintenance of said siding or standing place, and to compel its removal. While the plaintiff was not the owner of the soil where the siding was laid, it being on the opposite side of the street, still, if it were laid without legal authority, it was a nuisance, and the plaintiff, as an abutting owner, had sufficient special interest to maintain, on his own behalf, an action for its abatement. The question, therefore, is whether the defendant had legal authority for the construction and maintenance of the siding. The defendant did not plead any authority to construct or maintain the siding, and the only proof of authority for the presence of its railroad on the avenue at all is found in the affidavit of Benjamin Norton, president, used on the application for an injunction pendente lite, and put in evidence on the trial by the plaintiff. From this it appears that the Park Avenue Railroad Company (to whose right the defendant has succeeded) was incorporated under the general railroad·act of 1850. By chapter 600, Laws 1870, this company was authorized to construct its railroad over a route which included Ninth avenue. There was no express authority given to maintain turnouts or sidings. The act of 1874 (chapter 448) did not increase the powers of the company in this regard, for the statute, by its express terms, only applied to the streets named in it. We assume, however, that under the general railroad act the company would have power to construct necessary sidings or turnouts, provided it obtained authority therefor from the city authorities. But such authority was a necessary prerequisite, for by sections 183 and 193 of the general railroad act neither could a railroad be constructed within a city, nor its location therein changed, except by the consent of the corporation or common council. That at least this company could not exercise such a privilege without that consent is apparent, for section 2 of the act of 1870, granting the original franchise, provides: "That the road shall be subject to the same laws and ordinances of the city of Brooklyn as apply to horse railroads generally in said city." Section 11, art. 9, of the ordinances of the city of Brooklyn directs: "No permit shall be granted to any railroad company for the purpose of laying any railroad tracks, sidings, switches or turnouts in the streets or avenues of said city, except upon the consent of this common council." It is not claimed by the defendant that any

such consent has been obtained from the common council. The defendant, however, contends that the exclusive control over Ninth avenue is, under the charter, vested in the commissioner of parks. By subdivision 5, § 2, tit. 16, of chapter 583, Laws 1888, the department of parks is granted full and exclusive power to determine the particular location of any railroad track which was then or might thereafter be placed upon the roads, streets, or avenues forming the boundary of the park, of which avenues Ninth avenue was one. We think this provision did not abrogate the power of the common council on the subject. The commissioner could well determine the particular location of the track, if authorized, and yet the power to determine whether there should be any track at all remains in the common council. But even if it should be assumed that all power over the subject-matter was vested in the park commissioner, we think that the appellant failed to establish the consent of that commissioner to the construction or maintenance of the siding sought to be enjoined. It was on this ground that the decision of the trial court proceeded, and that court properly, as we think, found as a matter of fact that no consent had been given by the commissioner. It is true that a communication was sent by the commissioner's secretary to the defendant, giving permission to change the tracks on Ninth avenue in accordance with an agreement between the company and adjacent property owners. Though the commissioner, as a witness, testifies that he intended to give this consent only as an individual, from his status as a property holder, we think the circumstances attending the application and the communication were such as to make it an official act. But this does not protect the defendant (even on the assumption that the commissioner had exclusive power over the subject), for it clearly appears that the siding to which the consent applied differed radically, both in location and extent, from the one actually constructed. As the views here expressed require an affirmance of the judgment, it is not necessary that we should discuss the question whether the use of the siding as a standing place for cars is or is not a lawful and proper use. Nor is it necessary to modify the judgment by limiting the injunction till such time as the defendant may obtain legal authority for the maintenance of the siding. If it should obtain such authority, it may apply to open the judgment.

The judgment appealed from should be affirmed, with costs. All concur.