view we are sustained by the decision of the court of appeals in Mc-
Dougall v. Society, 135 N. Y. 551, 556, 32 N. E. 251.

Judgment should be entered for the defendant.    All concur.

—————

(23 App. Div. 112.)

IRVINE v. ATLANTIC AVE. R. CO.

(Supreme Court, Appellate Division, Second Department.    December 14, 1897.)

STREET RAILWAYS—LAYING SIDINGS—PERMITS.
     The provision of Laws 1896, c. 825, that the commissioner of the depart-
     ment of city works of the city of Brooklyn shall grant permits to open the
     surface of streets to all persons who may otherwise lawfully perform such
     work, did not operate to repeal a city ordinance providing that "no permit
     shall be granted to any railroad company for the purpose of laying any
     * * * sidings, switches, or turnouts in the streets or avenues of said
     city except upon consent of the common council."

Appeal from special term, Kings county.

Action by William Irvine against the Atlantic Avenue Railroad
Company.   From an order opening and vacating a judgment, and
granting a new trial, plaintiff appeals.    Reversed.

Argued before CULLEN, BARTLETT, HATCH, and BRADLEY,
JJ.

Hugo Hirsh, for appellant.
Henry Yonge, for respondent.

BRADLEY, J.   In this action, brought in 1894 for injunctive re-
lief, the defendant was, by the judgment, enjoined from using or
maintaining the switch or siding constructed by it on Ninth avenue,
between Union and Carroll streets, in the city of Brooklyn, and from
refusing to forthwith remove such switch or siding.    This judgment
was affirmed (10 App. Div. 560, 42 N. Y. Supp. 1103), and appeal has
been taken to the court of appeals.    As proceedings upon the judg-
ment were not stayed, the plaintiff moved the court to punish the de-
fendant for contempt.    At the same time the defendant moved the
court for modification of the judgment, and for other relief.    The mo-
tions were heard together, and the court made the order appealed
from, opening and vacating the judgment, and granting a new trial,
to enable the defendant to introduce evidence relating to consents
which had been obtained since the trial in reference to the construc-
tion and maintenance of the switch.    The order also continued the
injunction until the determination upon the new trial.    It was within
the power of the court to grant the new trial, if any available reason
for it had arisen since the trial, to relieve the defendant from the
continuance of the injunction awarded by the judgment.    No reason
appears to us for the modification of the views entertained of the
case when it was here on appeal from the judgment, so far as relates
to the situation existing at the time of the trial.    It was then sug-
gested in the opinion of the court that, if any legal authority should
be obtained to maintain the siding, application could be made to open
the judgment.    The Nassau Electric Railroad Company, having in
1896, as lessee, succeeded to all rights of the Atlantic Avenue Rail-

road Company, made the application resulting in the order in question. This Ninth avenue came within the operation of the statute which provides that the department of parks shall have the exclusive power to determine the particular location of any railroad track placed upon the avenue. Laws 1888, c. 583, tit. 16, § 2, subd. 5. The application of the Nassau Company was founded upon the fact that such department, by its commissioner, had determined and designated the location for the switch on the avenue between Union and Carroll streets, and that the permit had been obtained from the department of city works to do it. It is urged on the part of the railroad company that such designation and permit constituted all that was requisite to enable it to construct and maintain the switch there. They are not effectual to support such claim or right to do so, if the ordinance remains in force which provided that:

"No permit shall be granted to any railroad company for the purpose of laying any railroad tracks, sidings, switches, or turnouts in the streets or avenues of said city except upon the consent of the common council."

It is, however, insisted that the ordinance was repealed by the provisions of chapter 825, Laws 1896, that:

"It shall not be lawful for any person or corporation to open or otherwise disturb or interfere with the surface of any street or avenue in the city of Brooklyn without first obtaining a permit from the department of city works. * * * The commissioner of said department * * * shall grant such permits to all persons or corporations who may otherwise lawfully perform such work."

This is an added section to title 15, c. 583, Laws 1888, and numbered 52. There is nothing, in express terms, in the act, excluding the necessity of any consent on the part of the city, before then requisite to the right to lay railroad tracks in its streets, and therefore the question is one of the construction and effect of the new section. The main tracks of this road were laid in Ninth avenue by the Prospect Park & Coney Island Railroad Company upwards of 20 years ago, as the successor of the Park Avenue Railroad Company, pursuant to the franchise or right granted to the latter company to do so by the provisions of chapter 600 of the Laws of 1870. But, as was said in the opinion of the court upon the review before referred to, the provisions of chapter 448 of the Laws of 1874, authorizing the construction and maintenance of switches and sidetracks upon certain streets and avenues, did not include Ninth avenue within the permission so given. Those statutes have no significance bearing upon the question presented here for consideration. It has been the policy of the law to make the right to lay railroad tracks in the streets of cities dependent upon the consent of the municipalities. This was provided for by the general railroad law of 1850 (sections 23, 28, subd. 5), as well as by the recent railroad law; and for that purpose the common council of a city has been treated as its representative body. The legislative power of the city is vested in the common council, and as such it has the power, and is charged with the duty, of enacting ordinances. This ordinance, when enacted, had within its purposes the force and effect of law, and its observance by all the city authorities was legally required. And it is provided by the charter of the

city that the commissioner of city works, as the executive officer of that department, shall be under the direction and control of the common council, except so far as such control is qualified.   Laws 1888, c. 583, tit. 15, §§ 1, 51.    These provisions, in that respect, apply equally to the newly-added section, 52.    By its provisions no further restriction upon the power of the common council is expressly made; and while the power to enact any ordinances providing for consent to lay railroad tracks in the streets of the city might, by statute, be taken away, and the authority vested in the commissioner of city works, relieved from the control of the common council to prevent it to be done, it is not seen that this was within the purpose of the act of 1896.    To take such power from the common council, and thus repeal the ordinance upon the subject, the legislative intent must quite clearly appear in the provisions of the act.    If the import of the act, fairly construed, is that in the respect in question the authority of the common council was superseded, and vested in the commissioner of city works, then such effect should be given to the act.    Then it would be deemed to have prescribed the only rule to be observed in that respect.    But repeal by implication is not favored, and such will not be deemed the effect of the later statute, unless it be inconsistent or repugnant to the earlier one.    Bowen v. Lease, 5 Hill, 221; People v. Palmer, 52 N. Y. 84.    And as was said by Judge Finch in Re Curser, 89 N. Y. 403, "repeal by implication must rest upon very clear and definite reasons.    It must be the necessary solution of an inconsistency not otherwise to be solved."    By the application of this canon of construction to the provisions of chapter 825, Laws 1896, it seems quite clear that they did not operate to repeal the ordinance before mentioned.    They are not inconsistent with its continued effect as such.    The commissioner is required by this statute to grant permits to corporations which "may otherwise lawfully perform such work."    Whether the corporation may otherwise lawfully do so is dependent on whatever is prerequisite to the permit of the commissioner, from which the consent of the common council is not, by any repugnancy, excluded.    This duty, mandatory in character, vested in the commissioner, is executive, merely, and is entirely consistent with the purpose of the ordinance.    This provision for permits of the commissioner of city works must be treated as an additional authority, thus represented, to disturb the surface of the streets, without any retrenchment of anything on the part of the municipality then existing to permit the lawful performance of the work there. In the view taken, the consent of the common council was necessary to enable the company to put in and maintain the switch or siding; and, as that has not been obtained, a new trial would be entirely useless to defendant.

The order should be reversed.    All concur.