As the application to submit these questions to the jury was denied by the court, the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

(25 Misc. Rep. 383.)

McCLEAN v. WESTCHESTER ELECTRIC RY. CO. et al.

(Supreme Court, Special Term, Kings County. December, 1898.)

1. STREET RAILROADS—CONSTRUCTION—INJUNCTION—ABUTTERS.
An abutting owner may enjoin the unauthorized construction of an electric railway in a street without showing that the benefits from the railway will not offset the injuries.

2. SAME—EXTENSION—VALIDITY.
A street-railroad company, whose articles contemplate a single, connected road, carrying from end to end for a single fare, cannot construct an independent line, not connected with its original line, under extension proceedings.

3. SAME—MUNICIPAL CONSENT—RETROACTIVE EFFECT.
Where an extension of a street railroad was invalid because it was disconnected from the line authorized in the original franchise, a second extension proceeding, providing for a line to connect the extension with the original, does not validate resolutions of municipal authorities authorizing the first extension.

Action by Joseph F. McClean against the Westchester Electric Railway Company and others for injunction. Granted.

James C. Church, for plaintiff.
Sheehan & Collin, for defendants.

JOHNSON, J. The defendant the railway company is a corporation organized under the railway law, and proposes to maintain and operate a double-track street railroad along Pelhamdale avenue; using for that purpose electric power, and the overhead trolley system. The plaintiff is the owner of a lot of land fronting on and bounded by that avenue, and, alleging that the railroad company has no legal right upon the avenue, he asks the court to enjoin the company from operating or maintaining its railroad thereon. The question thus first presented is, has the plaintiff standing in a court of equity sufficient to entitle him to the relief he asks, if his claim as to the illegality of the defendant's railroad is correct? I think it can hardly be doubted that a double-track railroad, with the supports and structure appropriate for operation by the overhead trolley, of and by itself, and apart from any benefits from its operation and use, would be an injury to the plaintiff's property, and that a finding to that effect would be justified. Doubtless a court of equity will not intervene for trivial cause, but where the claim is for an exclusive, permanent, and illegal use of a street for the main, through tracks of a railroad, I think a presumption of damage almost necessarily follows. It has been held that, in ascertaining the amount to be paid by elevated railroads to the owners of abutting property for the exercise of their franchises in the public streets, the resulting benefits may be considered, and, as it were, balanced against the resulting loss. Bohm v. Railroad Co., 129 N.Y.576,29 N.E.802. But I do not think that an owner of land, offering to prove that a railroad is unauthorized, and so is a nuisance, is

called upon to prove that the probable, speculative, or actual benefits. of the unauthorized structure will not offset the apparent disadvantage or injury, however small.    Recent decisions seem to indicate that the right to protect public highways from invasion is very limited. People v. Equity Gaslight Co., 141 N. Y. 233, 36 N. E. 194; Adamson v. Railroad Co., 89 Hun, 261, 34 N. Y. Supp. 1073.    If it is held that an abutting owner's right to challenge such an invasion is limited by questions of balanced or resulting loss or gain, the power lodged in administrative officers having the control of streets would be a continuous menace to property.    If equity could not give relief, the law side of the court would not intervene by mandamus to compel the public officer to the performance of his duty.    Hence I think it clear that the plaintiff, as the owner of abutting property, has standing to maintain this action.    Irvine v. Railroad Co., 10 App. Div. 560, 42 N. Y. Supp. 1103; Black v. Railroad Co., 32 App. Div. 468, 53 N. Y. Supp. 312, at page 472, 32 App. Div., and page 314, 53 N. Y. Supp. As I understand it, this has been the rule and practice in this judicial district, and I can but think it would be regretable if the contrary rule were adopted.

The conclusion brings me to the consideration of the franchise and rights of the defendant corporation.    Without discussing other points, it seems to me that there is one fatal defect in the defendant's franchise.    The consent of the local authorities, the trustees of the village of Pelham Manor, it is conceded, is necessary.    Conceding that the trustees, elected for one year, without any new advertisement could amend the resolutions or proceedings passed or had in relation to defendant by the board of the previous year; conceding that no forfeiture, loss, or taint came by reason of any inaction or default on the part of the company,—the question stands as though it had asked and obtained the consent of the trustees in January, 1898.    But the difficulty is that at that date the defendant, as I regard it, had no capacity to ask for or receive this franchise,—a franchise to construct and maintain a railroad on Pelhamdale avenue.    That avenue was not described in the defendant's articles of association, and the defendant bases its right to ask for and to receive the consent for this avenue upon proceedings for extending its route.    But the first proceedings under which such an extension is claimed were, I think, clearly invalid.    They did not constitute an extension either of the railroad or of the route or routes of the defendant.    They only projected a railroad, not only independent of, but separate from, all the routes or roads to which the defendant then had any right or claim whatever.    It may be that this point is technical, but does it not follow that, if that extension proceeding was good, the defendant, if it had received the other necessary consents, could have constructed and operated a railroad upon the so-called "extension," making no connection with its railroad built on the routes described in its articles of association, and so have secured the right to build and operate two independent railroads in two different political divisions, and that under articles of association and provisions of law which contemplated but a single connected road, carrying from end to end for a single fare?    But it is said that the defendant has taken

a second extension proceeding, by which it has closed the gap between its routes as described in its articles of association and. in its first extension. But that came in February, 1898, and after the final action of the village trustees had been had. Holding that the action of the village trustees was invalid, because of the defect I have indicated in the first extension proceeding, I consider that, while the second extension proceeding might cure defects in the first, it could not relate back, operating, as it were, nunc pro tunc, so as to make valid the resolutions of the village authorities which were before inoperative and ineffectual. Unless this defendant, proceeding under the railroad law, had located a route upon Pelhamdale avenue, either by its articles of association, or by formal and valid extension proceedings, it seems to me very clear that it no more had capacity to take and exercise the franchise here in question than would a manufacturing corporation or a private individual. So holding, I decide that the plaintiff is entitled to the relief by injunction, as prayed for in his complaint.

Injunction granted.