The People of the State of New York ex rel. The Flat-
bush Gas Company, Respondent, *v.* Bird S. Coler, as
President of the Borough of Brooklyn, et al., Appellants.

1. Brooklyn (City of) — Franchises to Electric Light and Power
Companies — Must Be Granted by Common Council — L. 1888, Ch.
583.   Under the statute (L. 1888, ch. 583), revising and combining all the
special and local laws affecting public interests in the city of Brooklyn,
the legislative power of said municipality was vested in a board of alder-
men, who were to be called the common council, and, in the absence of
some special provision to the contrary, said common council was the
authority whose consent was required, under the Transportation Corpora-
tions Law, to the use of the streets, avenues, public parks and public
places for the purpose of supplying and selling electricity to consumers.

2. Same — Effect of L. 1895, Ch. 947, Amending L. 1888, Ch. 583 —
Does Not Authorize Department of Parks to Permit Electric
Light Companies, Lighting Parks and Parkways, to Furnish Elec-
tricity to Private Consumers.   No exception to the general rule
declared by that statute was made by the provisions of the subsequent
act amendatory thereof (L. 1895, ch. 947), which provided that the depart-
ment of public parks of the city of Brooklyn should have the full and
exclusive government, management and control of all public parks,
public places and parkways, including the Ocean parkway, with power
to pass and enforce laws and ordinances for the use, regulation and
government thereof, and such amendment does not authorize the park
department, or the commissioner of public parks, to grant to an electric
light company, having a contract to light said Ocean parkway and having
conduits in such parkway for conveying electricity for that purpose, per-
mission to sell and supply electricity from such conduits to private con-
sumers, without having obtained the consent of the common council
thereto. since it is evident upon an examination of such amendment that
the powers therein conferred upon the department of public parks are only
those necessary for the maintenance, improvement and regulation of the
public parks and parkways, including the Ocean parkway.

3. Use of Parkways for Private Lighting Not Connected with
or Incidental to Public Enjoyment Thereof.   While it is proper and
necessary that the department of parks should have the power to author-
ize an electric light corporation to lay conduits in the parks and parkways
for the purpose of lighting the same, the use of the parkways for conduits
designed to supply electricity to private consumers is in no sense con-
nected with or incidental to the public enjoyment of the parks and park-
ways; such use is for purposes beyond such enjoyment and constitutes a
privilege to use the parkways like any other public street, as a means to

carrying on a general business, and as such it should be left to the juris-
diction of the municipal authorities ordinarily intrusted with such
matters.

*People ex rel. Flatbush Gas Co.* v. *Coler,* 121 App. Div. 898, reversed.

(Argued October 4, 1907; decided December 17, 1907.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
July 9, 1907, which affirmed an order of Special Term grant-
ing a motion for a peremptory writ of mandamus to compel
defendants to issue a permit to the relators for the opening of
a certain street in the borough of Brooklyn for the purpose of
connecting buildings on abutting lands with the electrical wires
of the petitioner in said parkway to the end that electricity
might be supplied to private consumers.

The facts, so far as material, are stated in the opinion.

*Francis K. Pendleton, Corporation Counsel (James D.
Bell* of counsel), for appellants. The park commissioner of
Brooklyn was not the municipal authority authorized by.the
Transportation Corporations Law to give consent for the use
of streets or highways to the relator. (L. 1890, ch. 556,
§§ 60, 61; *People ex rel. W. G. Co.* v. *Deehan,* 153 N. Y.
528; *People ex rel. N. Y. & R. Co.* v. *Cromwell,* 89 App.
Div. 291; *Ghee* v. *N. U. G. Co.,* 158 N. Y. 510; *Irvine* v.
*A. A. R. R. Co.,* 10 App. Div. 560.)

*William N. Dykman* for respondent. The consent to lay
mains in the highway given by the park commissioner is all
that the municipal authorities could give and all that the
relator needed. (L. 1890, ch. 566, § 61; *Jones* v. *R. G. &
E. Co.,* 7 App. Div. 465.) A contract by the municipal
authorities to light a highway carries their consent to lay the
necessary mains. (*People ex rel. B. U. Gas Co.* v. *Littleton,*
110 App. Div. 728; 185 N. Y. 605.) The park commissioner
was the municipal authority qualified to give the required
consent. (*Stranahan* v. *S. V. Ry. Co.,* 84 N. Y. 308; *Matter
of K. C. E. R. Co.,* 41 Hun, 425.)

Hiscock, J.   The appellants as the municipal authorities of the borough of Brooklyn refused to grant to the relator and respondent the desired permit to open Ocean parkway for the purpose of laying conductors and supplying private consumers with electricity on the ground that it had never received any permit or franchise from the proper municipal authorities to occupy and use said parkway for such purpose.

The learned courts below have overruled this contention and, as we think erroneously, and their orders should be reversed.

The respondent was organized under the so-called Gas Act of February 16, 1848.   The Knickerbocker Electric Light and Power Company was a corporation organized under the Transportation Corporations Law of 1890, for the purpose of using and supplying electricity for light, etc.   Both of these corporations had their respective principal places of business in the town of Flatbush before that town was incorporated into the municipality of Brooklyn.   In December, 1893, they were consolidated into a single corporation and thereafter the respondent had the franchise, right and power to erect conductors and fixtures in, over or under streets, avenues, public parks and places for the purpose of conducting and distributing electricity " with the consent of the municipal authorities." (Sect. 61, Transportation Corporations Law.)

Ocean parkway is a public street or avenue extending so far as this appeal directly deals with it, from Prospect Park in the city of Brooklyn to Coney Island.   It runs through what were originally the towns of Flatbush, New Utrecht, and Gravesend, but prior to the dates material to this controversy these towns were annexed to the city of Brooklyn and said parkway placed within the limits of that municipality.

Respondent bases its claim to the franchise or right to use said parkway for the purpose of supplying electricity to private consumers, and hence its right to the permit in question upon two contracts made with the commissioner of parks of the city of Brooklyn.

January 2, 1896, the first of these was made and by it the respondent agreed to erect, furnish and maintain upon Ocean parkway from Prospect Park to Coney Island certain arc lamps for the term of three years, furnishing the necessary poles, wires, conductors and other apparatus necessary for electric lighting, and the city of Brooklyn covenanted to pay the petitioner a certain compensation for the maintenance of its poles and for the electricity used in lighting the parkway. Thereafter the respondent duly entered upon the performance of this contract.

Thereafter and on August 4, 1897, the second contract was made, of which the first provision is important enough so that it may be quoted in full.   It provides: "That the party of the second part, the Flatbush Gas Company, for and in consideration of the sum hereinafter mentioned, agrees to remove from the Ocean Parkway the poles and wires now in use for lighting the said Parkway, from Prospect ·Park to Coney Island, and in place thereof put down and maintain a subway on the easterly side of the main driveway of the Ocean Parkway, and place therein all the wires necessary for lighting the said Ocean Parkway, and for supplying electric current to such public or private consumers as the said company may desire.   And for this purpose the party of the first part (the city) agrees that the party of the second part may extend ten lateral subways to the sides of the Ocean Parkway at the time of putting down the main subway, at such points as the party of the second part may select, and from the terminals of said laterals may make connections through the medium of small pipes to be laid under the surface of the sidewalks, for the purpose of lighting houses along said Parkway."

Said contract also provides that "the party of the first part, the said City of Brooklyn, agrees that the said party of the second part, The Flatbush Gas Company, may supply current to such public or private consumers as may be desirous of using it, providing the connections for such supply are made underground."   The conduits laid by the gas company

272    People ex rel. Flatbush Gas Co. *v.* Coler.    [Dec.,

Opinion of the Court, per Hiscock, J.        [Vol. 190.

were to contain room for wires necessary for the use of the fire department, etc.

Concededly this contract executed by the commissioner of public parks did by its terms confer upon the respondent the right to use its conduits laid in the parkway for the purpose of supplying electricity to private consumers, and the only question left in that connection is whether said official had the power to give any such consent.

Under chapter 583 of the Laws of 1888, entitled "An Act to revise and combine in a single act all existing special and local laws affecting public interests in the city of Brooklyn," the legislative power of said municipality was vested in a board of aldermen who were to be called the common council (Title 2, sect. 1), and it is conceded, or at any rate settled, that, in the absence of some special provision to the contrary, said common council was the authority whose consent was required, under the Transportation Corporations Law, to the use of the streets, avenues, public parks and places by respondent for the purpose of supplying and selling electricity. (*Ghee* v. *Northern Union Gas Co.*, 158 N. Y. 510.)

It is, however, urged that this special provision or exception to the general rule has been made; that when the contracts already referred to were executed power had been conferred upon the park commissioner to the exclusion of the common council to grant the consent now claimed by respondent, and reference is made to various acts providing for the opening and care of Ocean parkway and to the history of the latter as sustaining this contention. We do not see, however, that any consideration affecting the question now before us is presented either by such history or said acts which is not fully covered by chapter 947 of the Laws of 1895, amending chapter 583 of the Laws of 1888 already referred to. By this act section 2 of title 16 of the last act was so amended as to read, so far as pertinent, as follows:

"§ 2. The said department of parks shall have the exclusive government, management and control of all the parks, squares and public places in the city; and full and

1907.]   People ex rel. Flatbush Gas Co. v. Coler.   273

N. Y. Rep.]      Opinion of the Court, per Hiscock, J.

exclusive power to govern and manage the Ocean parkway from the circle to the southwesterly angle of Prospect Park to the ocean, and direct and regulate the public use thereof, as also the circle and concourse at either terminus * * * and to pass and enforce laws and ordinances for the proper use, regulation and government thereof * * *. And the said department of parks shall have, subject to the limitation aforesaid, full and exclusive power:

" 1. To lay out, regulate, improve and maintain the public parks of said city, and Ocean parkway and the concourse aforesaid * * * and to govern, manage and direct the same and the public use thereof."

The park commissioner was concededly the proper official to administer the powers conferred by this statute.

The contention of the respondent fairly requires us to determine that under the statute quoted the park commissioner had general authority to grant a permission to use Ocean parkway for purposes not directly connected with its ordinary enjoyment by the public, for while a corporation laying conduits in the parkway for the purpose of lighting it would in most cases, perhaps, supply light to neighboring residences, those two purposes would not be inseparably connected. If the commissioner could grant to the relator the franchise to lay its conduits for the purpose of supplying electricity to light the parkway and also to private consumers, there is no reason why he could not grant a franchise to one corporation to supply the municipality and to another corporation exclusively to supply private consumers. In fact, in this case it is claimed that he has granted a franchise which will enable the respondent to fulfill its contract of supplying light to the city for the term of only a few years and a franchise which will enable it perpetually to supply private consumers.

It does not seem to me that the statute should be construed as having conferred upon the park commissioner any such broad power to grant franchises. As I have already noted, the power to grant such franchises is generally lodged in the

common council or corresponding body, and we should not give a statute in derogation of this common rule, and transferring powers from the authorities commonly invested therewith to a special authority, any broader construction than is fairly warranted by its language and purposes.

The statute relied upon is found in that portion of the charter of Brooklyn which is entitled " Department of Parks." We at once recognize that such department naturally would be invested with general supervision, maintenance, care and control of parks and public places, and the regulation of the use thereof by the public, always having reference to the ordinary purposes for which they were designed. We would expect it to have the right, amongst other things, to decide questions relating to the care and beautifying of parks, the proper maintenance of roadways, the lighting thereof and the location of structures properly placed therein. Such matters naturally would be placed within the jurisdiction of authorities charged with special and limited powers of maintenance and supervision.

When, with these ideas in mind, we study the statute conferring in different phrases upon the department the power of control, management and regulation of the Ocean parkway, we have no great difficulty in concluding that the powers thereby conferred are of the character suggested.

Various subdivisions of the section which it is not desirable to quote at length with reference to the location of fountains, maintenance of fences and sidewalks and of railroad tracks, confirm our estimate of the nature of the powers which it was intended to confer. These powers would · doubtless authorize the department to confer a limited franchise to use the parkway for purposes which were necessary for and incidental to the ordinary public enjoyment thereof. For instance, it was necessary that it should be lighted, and it would be entirely proper and necessary that the commissioner should have power to authorize some corporation to lay conduits therein for the purpose of supplying such lights. The same very likely might be said of water pipes and other

structures.   But the use of the parkway for appliances designed for supplying electricity to private consumers is in no sense connected with that ordinary and primary public enjoyment of it which naturally ought to be subjected to the control of the park authorities.   Such use is for purposes lying beyond such enjoyment.   It constitutes a privilege to use the parkway just as any other public street as a means to carrying on a general business, and as such it should be left subject to the jurisdiction of the municipal authorities ordinarily intrusted with the control of such matters.

Nor will this conclusion interfere with the exercise of that class of powers which we judge to have been conferred upon the park commissioner, for if the board of aldermen should grant to respondent or any similar corporation authority to lay conduits in the parkway, I think that the commissioner would at least have the right to prescribe such reasonable regulations as to time, place and manner of the work as would least impair the public use and enjoyment committed to his care and regulation.

Respondent's counsel calls attention to subdivision 5 of section 2, already referred to, with reference to the location of railroad tracks in the parkway as sustaining his argument of power in the park commissioners to grant permits under the Transportation Act.   But the provision referred to seems to me to oppose rather than support his contention.   It provides that the department of parks shall have full and exclusive power "to determine the particular location of any railroad track which is now or may be hereafter placed upon such road, street or avenue, or upon any road, street or avenue under the control of said department, (and which include this parkway) provided, however, that no such railroad track or tracks shall be placed upon any such road, street or avenue without the consent thereto of the commissioner of parks."   If the department had the exclusive power to grant a franchise to lay a railroad through said parkway, we see no force in adding the proviso that no such railroad should be placed therein "without the consent thereto of the commisioner of

parks." Upon the other hand, the subdivision becomes intelligible when we construe it as meaning that the park commissioner should have power to regulate or veto the location of a track of a railroad which had secured from the proper municipal authorities in the first instance a franchise to lay its track. While the case of *Irvine* v. *Atlantic Ave. R. R. Co.* (10 App. Div. 560) may not be fully an authority upon the question which has been discussed, some of the views expressed in that case do tend to confirm the conclusions which have been reached here.

In accordance with these views, the order appealed from should be reversed, with costs in all the courts, and respondent's application denied, with costs and ten dollars costs of motion.

CULLEN, Ch. J., EDWARD T. BARTLETT, VANN and CHASE, JJ., concur; O'BRIEN and HAIGHT, JJ., dissent.

Ordered accordingly.