## BOISE ARTESIAN HOT AND COLD WATER CO., LIMITED, *v.* BOISE CITY.

## BOISE CITY *v.* BOISE ARTESIAN HOT AND COLD WATER CO., LIMITED.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF IDAHO.

Nos. 573, 639.   Argued May 7, 8, 1913.—Decided June 16, 1913.

Where appellants' direct appeal to this court under § 5 of the Judiciary Act of 1891 is taken on the claim that the ordinance on which the Circuit Court based its decision is in contravention of the Constitution of the United States, this court has jurisdiction to review not only the constitutional question but every other question properly arising in the case including error assigned by the other party on its cross writ for failure to allow its counterclaim under the contract.

Rights acquired under an ordinance granting the right to a water company to lay and maintain pipes in the streets is a substantial property right, with all the attributes of property; and the obligation of the contract in the ordinance on which it is based is protected against impairment by the contract clause of the Constitution of the United States.

There is a presumption that investments of large amounts of capital in a public utility enterprise will not be made on a franchise for necessary use of the streets which is a mere license revocable at will.

Where there is no limitation in the general law of the State, nor in the charter of the city, as to duration of franchises for public utilities in the streets, the grant of an easement for that purpose, not specifying a period of duration, is in perpetuity.

*Quære* whether the limitation of fifty years in § 2710, Rev. Stat., and § 2838, Rev. Codes of Idaho, on grants to corporations applies to a grant made by a municipality to an individual and afterwards assigned to a corporation.

Where there is a limitation in the law of the State of duration for which easements in streets can be granted by municipalities, an easement granted for an indefinite period continues for the statutory period.

There is a distinction between a definite grant for a period longer than

the law of the State permits and an indefinite grant; while the former may be altogether void as an effort to obtain that which is illegal, the latter is simply limited in duration to the period established by law, and during that time it is protected from impairment by the contract clause of the Constitution of the United States.

The municipal ordinance of a town in Idaho imposing additional obligations on a corporation holding by assignment an easement granted by a former municipal ordinance within fifty years for use of the streets for water mains *held* an unconstitutional impairment of the obligation of the contract of the former ordinance.

A municipality may not object to the State relieving a grantee of franchise rights from obligations formerly imposed by a general law of the State.

Municipal corporations are mere emanations from the State, exercising such public power as the State chooses to grant.

A statutory provision that all water companies must furnish free water to the municipalities in which they are situated does not constitute a contract to which the municipalities are parties; it is within the power of the State to relieve the water companies of the obligation and permit them to furnish water at reasonable cost.

A water company under the laws of the State of Idaho is entitled to compensation for water furnished and which it is ready to furnish to the municipality, even if the report of commissioners fixing reasonable rates in pursuance of the statute has not been adopted by municipal ordinance.

A municipality, which continues to use water furnished by a water company after giving notice that it will pay no further bills for such water, is not relieved by such notice from the obligation to pay therefor according to the reasonable rates which have been fixed pursuant to statute.

THE facts, which involve the constitutionality under the contract clause of the Federal Constitution of an ordinance of Boise City, Idaho, affecting a franchise for using the streets of the city for water supply purposes and the liability of the city for water supplied to it, are stated in the opinion.

*Mr. Richard H. Johnson*, with whom *Mr. Richard Z. Johnson* was on the brief, for plaintiff in error in No. 573, and defendant in error in No. 639.

*Mr. Charles C. Cavanah.* and *Mr. Charles F. Reddoch,* with whom *Mr. John J. Blake* and *Mr. John F. Maclane* were on the brief, for defendant in error in No. 573 and plaintiff in error in No. 639.

MR. JUSTICE LURTON delivered the opinion of the court.

These cases come here from the District Court direct, upon a writ of error sued out by the Water Company, and a cross writ of error sued out by Boise City, the defendant below.

The Water Company is a corporation of West Virginia, authorized to carry on its business in Idaho. It brought this action to recover from the city, for water furnished for fire purposes. The city defended upon several grounds, only two being now urged. The first was that the Water Company was under a statutory obligation to furnish water for fire purposes free of charge; and the second, that the city was under no legal obligation to pay, because there was neither ordinance nor contract for the water claimed to have been furnished.

By way of set-off or counter-claim, it asserted the liability of the Water Company for a large sum of money, claimed to be due on account of monthly "license fees," which, by ordinance, it was required to pay for the use of the streets of the city for laying and maintaining its distributing water pipes. The Water Company denied the validity of the ordinance imposing the "license fees" claimed, asserting that by ordinance long prior in time, its predecessor in right and title had been granted an irrevocable easement in the streets for the purpose of laying its pipes therein, and that the later ordinance under which the city claimed the right to charge rental for their use and occupation with its pipes, was an impairment of its vested street easement and in contravention of the Constitution of the United States.

The court below ruled that the ordinance under which the Water Company claimed its right to lay and maintain its pipes in the streets of the city was a revocable license, and that the requirement of the later ordinance that it should thereafter pay monthly the sum of three hundred dollars for the privilege of so occupying the streets with its pipes was not an impairment of any contract and was in every respect valid.

The foundation of the street rights asserted by the Water Company is an ordinance of October 3, 1889, in these words:

"An Ordinance Granting Eastman Brothers the Right to Lay Water-pipes in Boise City.

"The Mayor and Common Council of Boise City, Idaho, ordain:

"Section 1. H. B. Eastman, and B. M. Eastman and their successors in interest in their water works, for the supply of mountain water to the residents of Boise City are hereby authorized to lay and repair their water-pipes, in, through and along and across the streets and alleys of Boise City, under the surface thereof; but they shall, at all times, restore and leave all streets and alleys in, through, along and across which they may lay such pipes in as good condition as they shall find the same, and shall, at all times, promptly repair all damage done by them or their pipes, or by water escaping therefrom.

"Section 2. This Ordinance shall take effect from and after its passage and approval.

"Approved October 3, 1889."

This was accepted and the grantees named therein immediately began the construction of their plant. Later, in July, 1890, similar street rights were granted to a corporation of Idaho known as the Artesian Water and Land Improvement Company. This last named company accepted the ordinance and expended much money in the construction of another water supply system. At some

date prior to 1895, apparently on March 28, 1891, each of these grantees conveyed and assigned all of their rights, franchises and easements to the present plaintiff in error. It has since that time made large expenditures in improving the plants acquired from its predecessors, and has since maintained its pipes in the streets and has continuously furnished water to the city for fire purposes and to private consumers. The ordinance which is claimed to be an impairment of the street rights acquired by the ordinance of 1889 and long occupancy was passed on June 7, 1906, and is in these words:

"An Ordinance requiring the Boise Artesian Hot and Cold Water Company, a private corporation, organized and existing under and by virtue of the laws of the State of West Virginia, to pay to Boise City, a municipal corporation of the State of Idaho, on the first day of each and every month, a monthly license of $300 for the use and occupancy of the streets and alleys of said Boise City, Idaho, in furnishing water to the residents of said city.

"Whereas, Boise City, is a municipal corporation organized and existing under and by virtue of the laws of the State of Idaho, and

"Whereas, the Boise Artesian Hot and Cold Water Company, is a private corporation organized, existing and operating under the laws of the State of West Virginia, and

"Whereas, said Boise City, on the 3d day of October, 1889, approved an ordinance granting to H. B. Eastman and B. M. Eastman and their successors in interest in their waterworks, a license for an indefinite period to lay and repair water-pipes in the streets and alleys of said Boise City through which water is being furnished by said company to the residents of said city, for profit, and

"Whereas, the said Boise Artesian Hot and Cold Water Company are the successors in interest of the said H. B. Eastman and B. M. Eastman in and to said waterworks."

" Now, therefore, Boise City does ordain as follows:

"Section 1. That the said Boise Artesian Hot and Cold Water Company, a private corporation organized and existing under and by virtue of the laws of the State of West Virginia, the successors in interest of the said H. B. Eastman and B. M. Eastman in and to said waterworks now being operated and said license granted by said ordinance of October 3, 1889, in said Boise City, are hereby required to hereafter pay to said Boise City on the first day of each and every month a monthly license of $300 for the privilege granted by said ordinance of October 3, 1889, to lay and repair water-pipes in the streets and alleys of said city through which water is being furnished to the inhabitants of said Boise City by said Company:

"Section 2. That demand is hereby made by said Boise City of and from said the Boise Artesian Hot and Cold Water Company to hereafter pay to said Boise City on the first day of each and every month said monthly license of $300 required by Section 1 of this Ordinance.

"Section 3. That the City Clerk of said Boise City is hereby required, after this ordinance is in force, to notify said The Boise Artesian Hot & Cold Water Company of the requirements of this ordinance to pay said license as aforesaid.

"Section 4. That nothing in this ordinance shall be construed or understood as granting any privilege or authority for any other term than that provided for in the aforesaid Ordinance of October 3, 1889.

· "Section 5. This Ordinance shall take effect and go in force from and after its passage and approval."

Upon the issues there was a judgment against the city for the full amount claimed as due for water furnished for fire purposes, less the agreed amount of the city's counter-claim, which, by direction of the court, was found for it, being so much of the claim for rentals as had ac-

crued after April 1, 1909, and before the bringing of this action.

The right of the Water Company to come direct to this court is conferred by § 5 of the Judiciary Act of March 3, 1891, 26 Stat. 826, c. 517, it being a case in which it was "claimed" that the ordinance, imposing license fees, as a law of the State, was in contravention of the Constitution of the United States. *Loeb* v. *Columbia Township*, 179 U. S. 472, 477. This court has, therefore, jurisdiction to review not only the constitutional question which arose in the case, but every other question properly arising.

The City of Boise has assigned error upon the judgment which was rendered against it upon the claim of the Water Company for water furnished the city for fire purposes. That it may do so upon its cross writ of error, is plain. *Field* v. *Barber Asphalt Co.*, 194 U. S. 618.

The grant of the right to lay water pipes upon the streets for the purpose of distributing water, found in the ordinance of October 3, 1889, purports to be nothing more than a grant of the right to occupy the streets of the city, with the distributing pipes of the Water Company. It was accepted and about $200,000 has been expended in the construction of the necessary works and the laying of its system of pipes under the streets. The assertion of the right to require the company, after so many years of occupation, to pay a monthly rental for the use of the streets, is grounded upon the claim that under the grant to the Eastmans it had obtained nothing more than a revocable license, and its occupation of the streets was, therefore, subject to be terminated at any time.

The right which is acquired under an ordinance granting the right to a water company to lay and maintain its pipes in the streets is a substantial property right. It has all of the attributes of property. It is assignable and will pass under a mortgage sale of the property and franchises of the company which owned it. Dillon's Mun. Corp.,

5th ed., § 1265; *Detroit* v. *Detroit Street Railway*, 184 U. S. 368, 395, 396; *Louisville* v. *Cumberland Tel. & Tel. Co.*, 224 U. S. 649, 661. *Detroit Railway Co.* v. *City of Detroit*, 64 Fed. Rep. 628. The grant was made in contemplation of the investment of large capital in the construction of a system of water works for the permanent supply of the city with water. The presumption is that no such enterprise would have been entered upon if the street easement was subject to immediate revocation. The city had the express power to provide its inhabitants and itself with water, under its legislative charter. It could not grant a corporate franchise to a water company. Neither did it undertake in this ordinance to enter into a contract for a supply of water for public or private purposes. What it undertook to do was to grant to those who proposed to construct and maintain works for that purpose the right to "lay and repair" their distributing pipes along the streets of the city. There is no limitation in the general law of the State, nor in the charter of the city, as to the duration of a contract granting an easement in the streets for that purpose, unless it be found in § 2710, Revised Statutes of Idaho, being § 2838, Revised Codes of Idaho. That statute is in these words:

"SEC. 2710. No corporation formed to supply any city or town with water must do so unless previously authorized by an ordinance of the authorities thereof, or unless it is done in conformity with a contract entered into between the city or town and the corporation. Contracts so made are valid and binding in law, but do not take from the city or town the right to regulate the rates for water, nor must any exclusive right be granted. No contract or grant must be made for a term exceeding fifty years."

The original grant of street rights was assignable on its face and was made to individuals. It was held in the case of *Jack* v. *Village of Grangeville*, 9 Idaho, 291, that the section above set out applied only to corporations. A

later ordinance granted similar rights to a corporation. The plaintiff in error has succeded to the rights of both. The ordinance of June 7, 1906 imposes the rental charge, called a "license fee," for the privilege granted by the ordinance of October 3, 1889, which was the grant to the Eastmans. But, if it be assumed that § 2710 limits the term of any contract or grant with any water company, corporate or otherwise, the most that can be said is, that such a grant for an indefinite term is thereby limited to a term of fifty years. There are cases which hold that when by law a municipality is prohibited from entering into a particular class of contracts, or from granting a franchise for a term longer than one specified, that a definite contract for a longer term than is permitted, is not effective even for the shorter statutory term: *Manhattan Trust Co.* v. *City of Dayton*, 59 Fed. Rep. 327. But this ordinance is indefinite in duration, and there is a substantial distinction between a contract which on its face shows a plain intent to grant and obtain more than is legal and a contract for an indefinite term. In the latter case the parties may be assumed as intending to grant or acquire no longer term than the law provides. The statute in the one case is openly and purposely defied and in the other, the term being indefinite, is limited by the statute. The distinction was noted and observed by District Judge Rogers in the case of *Old Colony Trust Co.* v. *City of Wichita*, 123 Fed. Rep. 762, which case was affirmed by the Circuit Court of Appeals, 132 Fed. Rep. 641; and by the Supreme Court of New York, in *People ex rel. Flatbush Gas Company* v. *Coler*, 54 N. Y. Miscellaneous Rep. 21, a case reversed upon another point. 190 N. Y. 268.

For the purposes of this case we need go no further than to hold, as we do, that the street easement was not a mere revocable license, and that if limited in time by § 2710, Revised Statutes of Idaho, that time had not expired when the ordinance of 1896 was passed. The plain effect

of this later ordinance was to impair the obligation of the contract resulting from the ordinance conferring the street easement. The court below erred, therefore, in instructing the jury to allow the counter-claim.

Coming now to consider the errors assigned by Boise City. Most of them have been withdrawn. Those which have been relied upon are.—

First: That the court should have instructed a verdict against the demand for water furnished for fire purposes, because the Water Company was under a statutory obligation to furnish water for such purposes to the city, free of charge.

Second: That the city cannot be made liable for water furnished for fire purposes in the absence of a preëxisting ordinance authorizing a contract for such a purpose.

The claim that the Water Company was under an obligation to furnish free water for fire purposes is rested upon the provisions of § 2711, Revised Statutes of Idaho, which provides that "all corporations formed to supply water to cities or towns . . . must furnish water to the extent of their means in case of fire or other great necessity, free of charge." This section had no application to individuals supplying water to cities and towns. *Jack* v. *Village of Grangeville*, 9 Idaho, 291. The original grant of street rights was to the Eastmans, who were individuals, and that easement was assigned in 1891 to the present corporation or its predecessors. In March, 1905, § 2711 was amended (and as amended is § 2839, Revised Codes of Idaho), so as to omit the requirement of free water for fire purposes by substituting the words, "and must also furnish water to the extent of its means in case of fire or other great necessity at reasonable rates established in the manner hereinafter specified."

The city may not object to the change in the obligation of the Water Company to supply free water. It was a burden which had been imposed by the State under

general law, applicable to all water companies, imposed solely for the benefit of the municipalities of the State. Such municipalities are mere emanations from the State, exercising such public power as the State chooses to grant. If such a provision in the general law of the State providing for the incorporation of water companies can be considered in any sense as constituting a contract, it was one to which the municipalities of the State were not parties, and we can imagine no constitutional reason why the State might not, if it sees fit, relieve even existing companies from the burden of such a law. The provisions of the original § 2711 were taken from the California statutes, and were held by the California courts not to impose any burden upon such companies that could not be removed without contravening the obligation of any contract within the prohibition of the Constitution. *Spring Valley Water Co.* v. *San Francisco*, 61 California, 18.

The "manner" of establishing reasonable rates is a requirement in the same section that rates were to be established by commissioners, two appointed by the city, two by the Water Company, and, in case of a disagreement, a fifth to be chosen by the four. The section provides that "the decision of a majority thus selected must fix and determine the rates to be charged *for all the purposes heretofore specified* for the ensuing three years from the date of such decision, *and until new rates* are established as herein provided." (Italics ours.) Revised Codes of Idaho, vol. 1, § 2839.

Prior to furnishing the water for fire purposes which constitutes the demand sued upon in this case, the commissioners provided for by the section above referred to were appointed and they agreed upon a schedule of charges for all purposes, whereby the charge for water for fire purposes was fixed at $3,000 per annum for fire hydrants "now in use and $3.50 monthly for such additional hydrants hereafter established." This schedule of rates

was not changed or modified, so far as here appears, during the period covered by the account of the Water Company in suit, and by the terms of § 2839, Revised Codes, continued in force for three years "and until new rates should be established." The claim that the plaintiff in error, the Water Company, was under obligation to furnish free water, is wholly without merit.

The second defense was that there was no ordinance or contract touching the furnishing of water for fire purposes, and, therefore, the Water Company had no right of action.

The city, both under its charter and the general law of the State, had power to obtain a water supply for both general and fire purposes. Companies undertaking to supply cities with water were required, when the claim here involved arose, to furnish water at "reasonable rates" to be determined by commissioners. The city joined in the appointment of the commissioners which fixed the rates for fire purposes in the schedule agreed upon in July, 1905. In August of the same year, the commissioners filed a supplementary report defining the service to be rendered in furnishing water for fire purposes, in which, among others, were these conditions:

a. Hull's Gulch reservoir was to be kept filled with water.

b. A steam pressure of not less than sixty pounds was to be maintained at the boilers and pumps at the pumping station.

c. A fire alarm system outside the city limits was to be paid for, and maintained by the Water Company.

d. The plant to be kept at all times in condition for effective service in case of fire, and frequent tests made of the hydrants on the streets, defects discovered to be reported to the mayor.

That this report and the schedule of rates and charges were never adopted by the city council is of no moment. They were reported to the city and were effective by the

terms of § 2839, Revised Codes of Idaho, when agreed to
by a majority of the commissioners, for a term of three
years and until new rates should be established.   From
August 1, 1905 to May 1, 1906, the city paid the monthly
rates fixed by the schedule, but from that date it refused
to pay and gave notice that it would pay no longer.   But
there was evidence that the Water Company denied the
city's right to refuse to take water upon the notice given,
and continued to maintain its service and to furnish water,
and that the city continued to use the water for fire pur-
poses.

The trial judge upon the legal effect of the continued use
of water by the city for fire purposes, charged the jury as
follows:

"If you find that the City, through the fire department,
and with the knowledge of the responsible and governing
officers of the City, that is, the city council and the mayor,
continued to maintain these hydrants for fire purposes, and
from time to time as there was need continued to use the
water therefrom and required the company to connect its
mains with other hydrants—there is some testimony to
the effect that eleven additional hydrants were installed
at the instance of the city, and connected with the Com-
pany's mains,—in other words if you find from all of the
evidence in the case that the City, through its responsible
officers, the city council and the mayor, continued to main-
tain these hydrants and use them as there was need, and
take water from the company's mains, *the water company's
mains*, as there was need therefor, if this was done know-
ingly, I say, then there arises by implication of law what
we call an implied contract on the part of the city to pay
for the water, and in this case an implied obligation to
pay in accordance with the schedule rates.   In other
words, the Water Company here stood in the position of a
merchant or other person having goods to sell, with the
prices thereof quoted.   If you go and order an article with

price so quoted you do so with the implied agreement and the obligation upon your part to pay for the article the price at which it is offered for sale. So here the Water Company stood in the position of having water for sale, for culinary purposes, for use in business buildings, for sprinkling lawns, and for fire purposes, and if a private person took this water and used it he would do so with the implied understanding that he would pay for it at the rate quoted, and, if the City took it, it took it with the implied understanding and imposed obligation to pay for it in accordance with the rates quoted."

The notice the city gave on May 10, 1906 was at best vague and indefinite. It was a notice "to discontinue the extra pressure maintained for fire purposes, as the city would pay no further bills for this service from this date." The Water Company responded that "they should continue to furnish the additional pressure of water for fire purposes." No further action was taken by the city council subsequent to that date. But under the charge and the verdict we must assume that the Water Company did continue to maintain the pressure for fire purposes and to comply with all of the other conditions imposed by the supplementary report of the rate commissioners, and that the city continued to use the fire hydrants supplied with water by the Water Company. That the city paid no more bills after May, 1906, is true. But if its notice meant that it would no longer receive or use the company's water for fire purposes, it said one thing and did the other.

In view of the provisions of § 2839, Revised Codes of Idaho, and the action of the city under the report of the commissioners appointed by law to determine a reasonable rate for water furnished for fire and other purposes, and the conduct of the parties thereafter, there was evidence justifying a finding by the jury of a contract to supply water for fire purposes.

VOL. CCXXX—7

There was no error in the charge of the court set out
above, nor in any other part of the charge of which the
city can complain.   Nor do we think the court erred in
denying the special charges asked by the city.   Its several
assignments of error are overruled.

For the error in holding the ordinance of June 7, 1906,
valid in law, and directing that from the amount found to
be due to the Water Company there should be deducted
the amount of the counterclaim of the city,

*The judgment is reversed and the case remanded for further
proceedings in accordance with this opinion.*