Jones, J.,
dissenting. The sole question in this case as presented is whether the board of county commissioners can revoke and annul a franchise granted by the state without having the power so to do delegated to it by the sovereign authority.
The question of the perpetuity of the franchise does not arise in this case. Did it arise, the question is fully met and answered by those provisions of the state constitution which authorize the general assembly, and that body alone, to alter or revoke any corporate law passed or special privilege conferred by the lawmaking power.
When the Dartmouth College case (4 Wheat., 518) was decided in 1819 Mr. Justice Story suggested in his opinion that the legislation of the various states conferring corporate rights and privileges, in order to avoid any inhibition of the contract-impairment clause of the constitution, might contain a provision reserving to the legislature the right to amend or repeal the rights so conferred. In accordance with this suggestion various states, including Ohio, prior to 1851, in the legislation granting corporate rights and privileges in perpetuity, expressly reserved the right to amend or repeal such statutes. But when the people of Ohio adopted the constitution of 1851 they, for their own *468 protection, carried these provisions for the right of amendment, revocation or repeal into the constitution itself. Article I, Section 2, of that instrument provides that “No special privileges dr immunities shall ever be granted, that may not be altered, revoked, or repealed by' the general assembly,” and Article XIII, Section 2, provides that “Corporations may be formed under general laws; but all such laws may, from time to time, be altered or repealed.These provisions of the constitution become an integral part of every law passed by the legislature, and enter into all legislation subsequently enacted and into every contract made or franchise thereafter granted, with the same force and effect as if incorporated bodily into such contract or legislation. These two sections of the constitution have usually been construed together by both the state and federal courts.
The franchise granted was by its terms indefinite in time, and the county commissioners, because of that fact, claim the authority to terminate at any time, and at their will, the operation of the road and oust it from its franchise upon the public highways of the state.
The right of occupancy of the public highways is a franchise, and as such is derived from the state itself. It is true that municipalities and boards of county commissioners may consent or withhold consent for the occupation of the public highways, and may impose terms and conditions under which such occupancy may be had, but the franchise itself emanates from the state, which has power at all times to limit the control and super *469 vision of its subsidiary agencies. The State, ex rel., v. Cincinnati Gas Light & Coke Co., 18 Ohio St., 262; The State, ex rel., v. Toledo Home Tel. Co., 72 Ohio St., 60; Farmer v. Columbiana County Tel. Co., 72 Ohio St., 526; Grand Trunk Western Ry. Co. v. South Bend, 227 U. S., 544, 555; Louisville v. Cumberland Telephone Co., 224 U. S., 649.
There are many special privileges enjoyed by corporations which do not accrue to individuals, and among others is the privilege or franchise of occupying streets of the municipalities and the highways of the state; the right of consolidation of corporate bodies; the power to make, alter and regulate rates of fare, etc. Shields v. The State, 26 Ohio St., 86, affirmed in Shields v. Ohio, 95 U. S., 319; Railway Co. v. Telegraph Assn., 48 Ohio St., 390, 432; Greenwood v. Freight Co., 105 U. S., 13. But it has been held that while these privileges and franchises, though perpetual in form, may be revoked, this does not divest the vested rights of the shareholders in the corporate property nor their rights of contract or choses in action. Greenwood v. Freight Co., supra.
This brings us to the main question involved in this case. Because the grant to the predecessor of the defendant was indefinite in time, could the board of county commissioners at any time revoke the franchise granted the former by the state and oust it and its property from the public highways ? And in this connection it must be conceded that there is no statutory authority whatever for the county commissioners to make such a revocation. Nor by the terms of the grant or resolution of *470 the county commissioners to the predecessor of this defendant was there reserved such power. The question under consideration is highly important, and I know of no adjudicated authority, under the facts stated, which sanctions that view. No case has been cited in which this principle was sustained. The courts have held with practical unanimity that wherever one of the agencies of the sovereign power has endeavored to revoke a franchise which could only come from the state, it can be done only by virtue of the power directly delegated by the state or reserved in the grant itself under such delegation.
- There is a wide distinction between the regulative powers incidental • to municipal grants based upon the exercise of the police powers and the attempt, as in this case, to evict and destroy the public use. This distinction is plainly made in the case of Grand Trunk Western Ry. Co. v. South Bend, supra.
An examination of the revoking resolution of February 19, 1913, shows no complaint of the character of the use made as affecting the public welfare, but the resolution was based solely on the claim to terminate the franchise at will because it savored of perpetuity.
In this particular case the county commissioners of Stark county, Ohio, on February 22, 1892, passed a resolution granting to the predecessor of this defendant the right to construct and operate an electric road on the state highway between Canton and Massillon. This grant was not for a definite time, neither did the resolution of the com *471 missioners reserve the right to revoke this grant. In the meantime large investments were made, bonds issued and the operation of the road continued. Later a controversy ■ arose between the commissioners and the company as to the reduction of fares between the two cities, and upon disagreement relating thereto, the county commissioners, on the 19th day of February, .1913, passed a new resolution, reciting that the term of grant was indefinite and continued only so long as the parties might agree. They therefore terminated the grant and ordered the prosecuting attorney to bring suit ousting the company from the operation of its franchise and directing the removal of all its property, equipment and belongings from the state highway. The result was this suit in quo warranto.
As already stated, the constitution of Ohio has lodged the power of revocation, alteration or amendment of corporate grants and privileges, whether perpetual or otherwise, in the legislative body of the state, and it alone has the power to revoke these privileges, which it may do either on its own initiative or by expressly delegating this power to its municipal agencies. And in this connection it may be stated, while a grant may be in terms perpetual, since the constitution has reserved to the state the right to repeal, it cannot be held to be perpetual when the state acts under its constitutional prerogative.
The following cases hold that where no power to alter or repeal has been reserved, either in the law or the municipal ordinance, any subsequent *472 action repealing the franchise was an impairment of the contract and unconstitutional under the contract clause of the constitution: Grand Trunk Ry. Co. v. South Bend, supra; Owensboro v. Cumberland Telephone Co., 230 U. S., 58; Boise Water Co. v. Boise City, 230 U. S., 84; Hudson Telephone Co. v. Jersey City, 49 N. J. Law, 303.
In the first case Mr. Justice Lamar said, on page 555:
“In determining whether théy would grant or refuse that consent the municipal authorities were obliged-to balance the present and prospective inconveniences of having trains operated through its streets against the advantage of having the railroad accessible to its citizens. It could have refused its consent, except on terms; it could have forced the road to the outskirts of the town, or could have permitted the company to lay tracks in the more thickly settled parts of the city. When such consent was once given the condition precedent had been performed and the street franchise was thereafter held, not from the city, but from the state which, however, did not confer upon the municipality any authority to withdraw that consent, nor was there any attempt by the council to reserve such power in the ordinance itself.”
Mr. Justice Lurton delivered the opinion in both of the cases reported, in the 230 U. S. Report, and on page 72 of the former case said:
“When the grant was accepted and acted upon by the grantee it became a contract between the city and the telephone company, which could not *473 be revoked or repealed, unless the power to repeal was clearly and unmistakably reserved.”
In that case Mr. Justice Day delivered the dissenting opinion, which was concurred in by three of his associate justices. However, it will be observed, upon examination of this dissenting opinion, that there was no contention as to the principle that the power of revocation must be delegated to the municipal authority, but was based solely upon the view that such delegation of authority had been made by the statutes of Kentucky, for Mr. Justice Day closes his opinion in the following language, page 83 of the Owensboro case:
“In my view the case in its present attitude comes to this: The permission to place poles and string wires in the city of Owensboro was granted under a charter vuhich expressly reserved the right to repeal by subsequent act of the municipal legislature.”
And in the New Jersey case of Hudson Telephone Co. v. Jersey City, supra, approvingly cited by Judge Lurton in the" former case, the learned judge there stated, on page 305:
“No provision is contained in the act under which the prosecutors were incorporated which confers upon a municipality the power to revoke a permission once granted. The grant of the franchise to this company was subject only to a repeal or alteration by the legislature, and when that corporation had acquired vested rights in the mode designated by their charter, it certainly was not in the power of a common council to strip them of any right so acquired.”
*474 A judgment of ouster has been rendered by the majority in this case on the authority of the East Ohio Gas Co. v. City of Akron, 81 Ohio St., 33; but that case is readily distinguished from the case at bar. In the Akron case the legislation of the state with reference to gas companies became a part of the municipal grant, and that legislation provided that the municipalities were “empowered to regulate from time to time” the price of gas, and provided further that in case the price was fixed by the council for a period of not exceeding ten years, upon written acceptance by the company, it should not be lawful for the council to require gas to be furnished at a less price during the period agreed on, not exceeding ten years. Pursuant to this legislation council passed an ordinance on the 26th day of September, 1898, granting the company the use of its streets and attaching a condition that for the first five years it should charge not exceeding twenty-five cents per one thousand feet of gas and for the next five years not exceeding thirty cents per one thousand feet of gas. After the expiration of ten years from September 26, 1898, council passed another ordinance, fixing the price of gas to be furnished by that company at twenty cents per one thousand feet and providing that the company for the ensuing ten years should not charge more than this lower rate provided by the ordinance. The company declined to accept the terms and signified its intention of discontinuing its business in the city, whereupon the city endeavored to restrain it from withdrawing, claiming that its franchise was a perpetual one and that *475 it was obliged to accept the changed rates provided by the city. The plain distinction between that case and this is that in the Akron case, both by statute and under the ordinance itself, a definite time could be fixed between the parties for the furnishing of gas, with a proviso, however, in both the statute and ordinance, that the rates for gas should' not be changed for a period of ten years. When this contract terminated between the parties, in case there was no renewal thereof, the franchise was at an end, and of course either party could withdraw from further continuance under the grant. The state of Ohio had specifically authorized council to make a grant “from time to time,” and when such a grant was made and accepted under the provisions of that law, the time did become definite. To hold otherwise than it did in the Akron case would require the parties to be held to a contract that necessarily lacked mutuality, and it is so stated by the judge delivering the opinion.
In this case the state of Ohio did not authorize the county commissioners to grant a franchise from time to time or to provide for any contract for time stipulation between the parties. The grant of the use of the public highway was indefinite as to time, and the principle involved here is covered by the following propositions of the syllabus in the case of Boise Water Co v. Boise City, supra:
“Where there is no limitation in the general law of the state, nor in the charter of the city, as to duration of franchises for public utilities in the streets, the grant of an easement for that purpose, *476 not specifying a period of duration, is in perpetuity.”
“Where there is a limitation in the law of the state of duration for which easements in streets can be granted by municipalities, an easement-granted for an indefinite period continues for the statutory period.
“There is a distinction between a definite grant for a period longer than the law of the state permits and an indefinite grant; while the former may be altogether void as an effort to obtain that which is illegal, the latter is simply limited in duration to the period established by law, and during that .time it is protected from impairment by the contract clause of the Constitution of the United States.”
This distinction is also noted in Old Colony Trust Co. v. Omaha, 230 U. S., 100.
Another distinction is that in the Akron case there was a delegated power to the municipal council pertaining to gas-rate stipulations which they could agree upon from time to time, but in the present case the legislature has granted to the board of county commissioners the naked authority of permitting the county commissioners, outside of municipalities, to grant an easement in the public highways, and to fix terms and conditions of construction. Sections 3438-3443, Revised Statutes.
Regulatory powers are lodged in the county boards to make reasonable terms and conditions under which these highways shall be occupied, but they do not permit them to employ at their mere pleasure the destructive power endeavored *477 to be utilized in this case. This power is lodged in the legislature of the state.
Upon the facts stated plaintiff is not entitled to a judgment of ouster.
Donahue and Newman, JJ., concur in the dissenting opinion.