WESTERN UNION TELEGRAPH CO. v. CITY OF HOUSTON. (No. 7276.)

(Court of Civil Appeals of Texas. Galveston. Jan. 4, 1917. Rehearing Denied Feb. 1, 1917.)

1. COMMERCE &sim;73—TAXATION OF FRANCHISE OF TELEGRAPH COMPANY—"PROPERTY."

A franchise granted by a municipality to a telegraph company to use its streets for the erection of its lines is a species of property taxable as such, and, though the telegraph company was engaged in interstate commerce, imposition of taxes on such franchise is not improper as burdening interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 124–134.

For other definitions, see Words and Phrases, First and Second Series, Property.]

2. LICENSES &sim;1—"LICENSE TAX"—NATURE OF TAX ON CORPORATE FRANCHISE—"PROPERTY TAX."

A tax imposed upon the value of the franchise in the public streets and grounds of a city in which a telegraph company had placed its poles and wires must be construed a property tax, and not a "license tax" upon the right of the company to do business in the city.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 1.

For other definitions, see Words and Phrases, First and Second Series, License Tax; Property Tax.]

3. TAXATION &sim;8 — POWER OF STATE — FRANCHISE OF TELEGRAPH COMPANY.

Act Cong. July 24, 1866, c. 230, 14 Stat. 221 (U. S. Comp. St. 1913, §§ 10072–10077), entitled "An act to aid in the construction of telegraph lines, and to secure to the government

the use of the same for postal, military, and other purposes, authorized telegraph companies to establish their lines over and along any of the military or post roads of the United States which have been, or may hereafter be, declared by law. The streets of a city along which a telegraph company laid its lines were post roads. The municipality granted the telegraph company a franchise, and thereafter attempted to tax the franchise. *Held*, that the act of Congress did not authorize the telegraph company to occupy the streets of the city without obeying reasonable regulations imposed, but merely forbade the municipality from denying such right to the telegraph companies subject to the imposition of such regulations, and so the imposition of a tax on the franchise was not improper as imposing a tax on a privilege granted by the federal government.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 21.]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by the City of Houston against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

N. L. Lindsley, of Dallas, and E. G. Senter, of Waco, for appellant. J. C. Hutcheson, Jr., of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by the city of Houston against the Western Union Telegraph Company to collect taxes levied by the plaintiff against the defendant for the years 1912 and 1913, upon what was designated by entry upon the tax rolls of the city as "franchise in the public streets and grounds of the city of Houston," which are valued at $15,000 for 1912 and at $18,000 for 1913. The defendant pleaded that it is incorporated under the laws of New York; that it had rendered its properties for taxation to the plaintiff for the years 1912 and 1913, and had paid it the taxes due thereon for said years; that it transacted no business wholly within the confines of the corporate limits of the plaintiff; that all messages handled by it either came from outside of said city for delivery therein, or went from said city to places outside the city; that it constructed its telegraph lines into Houston pursuant to the provisions of the act of the Legislature of Texas approved April 23, 1874 (Acts 14th Leg. c. 97), relating to telegraph lines; that on the 8th day of June, 1867, it accepted the provisions of the act of Congress of July 24, 1866, relating to the construction of telegraph lines, and built its lines in accordance therewith, and thereby became an instrument of interstate commerce; that by reason of acceptance of the provisions of said act, defendant was entitled to construct its lines over and upon the streets of plaintiff, which are post roads in accordance with federal statutes; that during the years 1912 and 1913 defendant transmitted messages for the government of the United States into Houston, and from points in other states and territories into

&sim;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

192 S.W.—37

said city, and from said city to other points in Texas, and in other states and territories; that said levies are void, in that they are in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States; that said levies are a burden upon interstate commerce and in contravention of subdivision 3, § 8, art. 1, of the Constitution of the United States; that they are void and contrary to subdivision 7, § 8, art. 1, of the Constitution of the United States; that said levies are in violation of subdivision 18, § 8, art. 1, of the Constitution of the United States; and that said levies are in violation of the Constitution and laws of the state of Texas. Plaintiff by supplemental petition alleged that the levies in controversy were made on the value of franchises and rights enjoyed by the defendant by reason of franchise grants made by the plaintiff. The cause was tried without a jury and upon an agreed statement of facts, and the trial resulted in a judgment in favor of plaintiff.

The agreed statement of facts shows that the defendant, Western Union Telegraph Company, is incorporated under the laws of the state of New York, and its business is the transmission of telegraph messages by wire for the public. On the 8th day of June, 1867, said company duly accepted the conditions, requirements, and burdens of the act of Congress of the United States passed July 24, 1866 (chapter 230, 14 Stat. 221), entitled "An act to aid in the construction of telegraph lines, and to secure to the government the use of the same for postal, military, and other purposes," said acceptance having been filed as required by law with the Postmaster General of the United States on June 8, 1867, as by that act provided.

During the years 1912 and 1913 said Western Union Telegraph Company, the defendant, maintained offices in Houston, Tex., and transacted a telegraph business therein, but handled no messages except such as either originated outside of said city and were delivered within its limits, or originated within its limits and were delivered outside said city. Much of its business consisted of messages transmitted to and from points outside of the state of Texas from and to said city of Houston.

The defendant company rendered for taxes for the years 1912 and 1913, and paid the taxes levied by said city upon its physical properties of all kinds therein situated. The value of the property so assessed, and upon which said taxes were levied and paid, was for the year 1912, $21,849.23, and for the year 1913, $21,850. It did not include the value of its city franchise in its rendition for either of said years. The tax authorities of the city added to the renditions made by the defendant for the year 1912, "Franchises on the public streets and grounds of the city of Houston valued at $15,000.00, rate $1.50, tax $225.00," and for the year 1913, "Franchises in the public streets and grounds of the city of Houston, valued at $18,000.00, rate $1.85, tax, $333.00." The defendant has never paid said additional taxes, and has always denied liability therefor.

Pursuant to the provisions of and rights and privileges conferred upon said telegraph company by its formal acceptance in 1867 of the act of Congress of the United States, approved July 24, 1866, and pursuant to the provisions of the act of the Legislature of the state of Texas relating to magnetic telegraph lines, approved April 23, 1874, said telegraph company constructed, long prior to 1912, its telegraph lines into and through the said city of Houston, and over and along and under its streets and highways, and has ever since down to the present day maintained and operated its said telegraph lines on the said streets and highways, all such streets and highways being post roads or post routes of the United States.

The defendant company applied for and received from the city of Houston the following franchises, which it accepted and has continuously enjoyed since the respective grants thereof. The first franchise now in force was adopted in 1888, and was captioned as follows:

"An ordinance granting to the Western Union Telegraph Company the right to place and maintain its poles and lines in the streets, alleys and public ways of the city of Houston on the terms and conditions herein stated."

The next ordinance granting franchises to that company was passed March 14, 1892, and was captioned as follows:

"An ordinance granting to the Western Union Telegraph Company the right to place and maintain its poles and lines in the streets, alleys and public ways of the city of Houston on the terms and conditions herein stated."

And the last ordinance, passed on July 15, 1907, is captioned as follows:

"An ordinance granting to the Western Union Telegraph Company the right to construct and place its wires in an underground conduit under certain portions of certain streets in the city of Houston, Texas."

Each of said ordinances granted to defendant the rights and privileges indicated in its caption. By section 11 of the ordinance last mentioned it is provided that the franchises thereby granted are for a period of 30 years. By section 12 it is provided:

"It is further expressly agreed that any lawful amounts which may become due the city of Houston under this ordinance, as well as any lawful taxes which may be imposed and become due and payable to the city of Houston, either upon the privileges granted by this ordinance or any property of the Western Union Telegraph Company, or its successors and assigns, situated in the city of Houston, shall be a lien and charge upon this franchise and all rights herein granted."

By the final paragraph of said agreed statement it is stipulated as follows:

"It is further agreed that all forms of law were fully complied with in making said assessment, and the amendments thereto, and said assessments are legal and valid, unless by reason of the facts set out in the statement of facts

said company is not subject to pay taxes on its franchises."

The only assignment of error presented in appellant's brief assails the judgment on the ground that the undisputed and agreed facts show that appellee had no lawful authority to levy the tax for which the judgment was rendered. The several propositions submitted under the assignment are based upon the assumption that the tax is not one upon property owned by the defendant in the city of Houston, but a tax upon the defendant's right to transact business, both state and interstate, and, said tax being upon both kinds of the business, is void under the Constitution and laws of the United States. Appellee concedes that:

"Since under the agreed statement of facts the Western Union Telegraph Company has qualified under the 'Post Roads Act of 1866,' the city of Houston can neither prevent its use of the streets, nor levy a tax in the way of a license or privilege tax upon its business done in the city of Houston."

The controlling question in the case is therefore whether the tax is what it purports to be, an ad valorem tax upon property of the defendant in the city of Houston, or a mere license or franchise tax upon the right of the defendant to conduct its business in said city. Appellee's counter proposition to all of appellant's propositions is as follows:

"The federal Post Roads Acts of 1866 did not grant a franchise, but merely imposed a prohibition upon a state to refuse a franchise, and the granting of such franchise by state or municipality may have attached to it such reasonable conditions as a state or municipality may see fit to impose, and, when granted, becomes a property right of grantee, assignable and taxable as any other property, and, it being admitted in this case that the city of Houston has assessed this franchise as other property for the purpose of ad valorem taxation, judgment of the court below must be affirmed, since no federal question is involved, nor is there any basis for the claim that the city of Houston is taxing or in any manner interfering in interstate commerce or the operation of the federal statute of 1866."

[1] There can be no question that a franchise is property and taxable as such. In the case of Owensboro v. Telegraph Company, 230 U. S. 64, 33 Sup. Ct. 990, 57 L. Ed. 1389, the Supreme Court of the United States, speaking through Justice Lurton, says:

"That an ordinance granting the right to place and maintain upon the streets of a city poles and wires of * * * a company is the granting of a property right has been too many times decided by this court to need more than a reference to some of the later cases" (citing Detroit v. Detroit Citizens' Street Ry. Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592; Louisville v. Cumberland Telegraph Company, 224 U. S. 649, 32 Sup. Ct. 572, 56 L. Ed. 934; Boise Artesian Water Co v. Boise City, 230 U. S. 84, 33 Sup. Ct. 997, 57 L. Ed. 1400).

"As a property right it is assignable, taxable, and alienable, and a principal basis for credit."

In the Boise Artesian Water Co. v. Boise City, 230 U. S. 84, 33 Sup. Ct. 997, 57 L. Ed. 1400, the Supreme Court said:

"The right which is acquired under an ordinance granting the right to a water company to lay and maintain its pipes in the streets is a substantial property right. It has all of the attributes of property. It is assignable and will pass under a mortgage sale of the property and franchises of the company which owned it."

The right of a state or municipal government to tax franchises granted by it to a telegraph company that had also acquired the rights granted by the act of Congress before mentioned is upheld by the Supreme Court of California in the cases of Telegraph Co. v. Hopkins, 160 Cal. 106, 116 Pac. 558, and Telegraph Co. v. Los Angeles City, 160 Cal. 124, 116 Pac. 565.

[2] The levy, by its terms, having been made upon the value of the franchise which was property and subject to taxation as such, the tax must be held to be a property tax and not a license or privilege tax upon the right of the defendant to conduct its business in the city of Houston.

[3] It is further contended by appellant that if it be conceded that the franchises granted to it by the city of Houston are taxable, the assessment in question, having been made in general terms, covers also the franchise granted by the act of Congress of 1866, before mentioned, and, there being no separation of the value of the two franchises, the whole assessment falls. This contention cannot be sustained for the reason that the act of Congress granted appellant no franchise in the streets of the city of Houston. The scope and purpose of the act of Congress is defined in an opinion of the Supreme Court of the United States in the case of Telegraph Co. v. City of Richmond, 224 U. S. 165, 32 Sup. Ct. 451, 56 L. Ed. 710. In that case the city of Richmond, as a condition of laying telegraph lines and poles upon the streets of the city, made certain requirements which the telegraph company deemed unreasonable, among the requirements being a charge of $2 for each pole, and $2 for each mile of underground work. Mr. Justice Holmes, in discussing the case, says:

"Appellant says that it has the right to occupy the streets of Richmond under the act of Congress, and therefore, although subject to reasonable regulation, it cannot be subjected to a discretion guided by no rules. Neither branch of this proposition, * * * commands our assent. * * * In view of what we have said, and the appellant's admission that it is subject to reasonable regulation, it would be unnecessary to consider its rights under the act of Congress, but for some further complaint that the appellant's property is taken without due process of law. That complaint opens the question what property the appellant has. The act of Congress, of course, conveyed no title and did not attempt to found one by delegating the power [to the telegraph company] to take by eminent domain. Western Union Telegraph Co. v. Pennsylvania Railroad Company, 195 U. S. 540 [25 Sup. Ct. 133, 49 L. Ed. 312, 1 Ann. Cas. 517]. It made the erection of telegraph lines free to all submitting to its conditions, as against an attempt by a state to exclude them because they were foreign corporations, or because of its wish to erect a monopoly of its own. Pensacola v. Western Union Telegraph Company, 96 U. S. 1 [24 L. Ed. 708]. It has been held to prevent a state from stopping the

operation of lines within the act by injunction for failure to pay taxes. Western Union Telegraph Company v. Attorney General, 125 U. S. 530 [8 Sup. Ct. 961, 31 L. Ed. 790]. * * * Except in this negative sense the statute is only permissive, not a source of positive rights. The inability of the state to prohibit the appellant from getting a foothold within its territory, both because of the statute and of its carrying on of commerce among the states, gives the appellant no right to use the soil of the streets, even though post roads, as against private owners, or as against the city or state where it owns the land. * * * When the appellant, without the right to exercise the power of eminent domain, desires to occupy land belonging to others, prima facie it must submit to their demands."

No question is raised as to the method by which the value of the franchise was determined, and if the equality or fairness of the assessment could be attacked in this proceeding, appellant has not sought to defeat the collection of the tax upon such grounds.

We think that the trial court was correct in holding that the tax was not unlawful upon any of the grounds presented by appellant. It follows that the judgment should be affirmed; and it has been so ordered.

Affirmed.