THE BOARD OF HEALTH OF THE TOWNSHIP OF PORTAGE
v. JACOB VAN HOESEN.

*Constitutional law—Eminent domain—Cemeteries.*

Act No. 219, Laws of 1875 (How. Stat. §§ 4778–4787), which provides for the condemnation of land by corporations organized under Act No. 12, Laws of 1869 (How. Stat. §§ 4763–4777), to establish and maintain rural cemeteries, and by the board of health of any township, or the common council, board of health, or board of trustees of any city or village, is unconstitutional.

*Certiorari* to review proceedings for condemnation of lands for cemetery purposes. Submitted on briefs June 10, 1891. Petition for such condemnation dismissed October 9, 1891. The facts are stated in the opinion.

*Thomas R. Sherwood* and *Osborn & Mills,* for petitioner, and respondent in *certiorari.*

*Howard & Roos,* for respondent, and petitioner in *certiorari:* .

McGRATH, J. This matter comes here by *certiorari,* to test the validity of certain proceedings to condemn land for cemetery purposes.

The board of health of Portage township filed a petition in the circuit court for the county of Kalamazoo, under chapter 181, How. Stat., to condemn certain land belonging to respondent for cemetery purposes. Respondent demurred to the petition, alleging, among others, the following grounds:

1. Said petition is insufficient to confer upon said court jurisdiction of the subject-matter of said petition.

2. The statutes confer no authority upon said court to summon a jury in cases of the kind alleged and set forth in said petition.

3. It appears by said petition that said cemetery which it is proposed to enlarge is not owned by a corporation organized to establish a rural cemetery, and provide for the care and maintenance thereof.

Chapter 39, How. Stat., makes it the duty of the township board of health to provide and maintain burial grounds, but contains no provisions for the condemnation of land for cemetery purposes.

In 1869 the Legislature passed an act entitled "An act to authorize and encourage the formation of corporations to establish rural cemeteries, and provide for the care and maintenance thereof."[1] This act contained no provision for the acquirement of lands except by purchase or gift. The act provided for the formation of stock companies for the purpose of establishing and maintaining cemeteries; that the articles should contain a statement of the amount of land to be purchased, and of the amount of capital necessary to make the purchase and improve the grounds. It provided for the issue of scrip or certificates of stock to the subscribers, and that such scrip should be personal property, and transferable by the holder. It empowers the board of directors to purchase land for the use of such association; to levy assessments upon subscribers to the articles of association, not

---

[1] How. Stat. §§ 4763–4777.

exceeding the amount subscribed; to dispose of the rights of burial, fix the prices thereof, make conditions in relation to burials within the cemetery grounds, and guarantee to the grantees of burial rights the care and preservation of the grounds; to establish such rules and regulations for the control and management of the grounds, and all matters and things incident thereto, as they shall deem for the best interests of the corporation; to sell any part or portion of the lands owned by such corporation, in case the same shall not be occupied or required for burial purposes, or for the uses of such cemetery; to invest the moneys received from the sale of burial rights; and to prescribe, from time to time, the interest or dividends which shall be paid to the holders of the scrip. It provides for the reservation out of the proceeds of the sale of burial rights of an amount which, in the opinion of the board of directors, shall be sufficient to create a fund which, when invested, shall produce an income sufficiently large to meet the expense of keeping the ground in good condition; and it further provides that all grants of rights of burial shall be transferable only upon compliance with such conditions as shall be prescribed by the board of directors.

In 1875 the last-named act was amended (Act No. 219, Laws of 1875) by adding 10 new sections,[1] providing that " whenever the board of directors of said corporation, the board of health of any township, or the common council, board of health, or board of trustees of any city or village, shall deem it to be desirable and necessary to enlarge the limits of any cemetery which has been or may be hereafter established," application may be made to a circuit judge for a jury to ascertain and determine the compensation to be made for the land required, and the

---

[1] How. Stat. §§ 4778–4787.

necessity for using the same; and, after providing for the summoning of a jury, notice to the owners, a hearing, and a determination by said jury, the amending act provides that judgment shall be rendered by the court for the amounts found by the jury, and, upon proof of payment of such amounts, the court "shall, by an order or decree, adjudge and determine that the title in fee of such real estate shall * * * forever thereafter be vested in such board of directors, board of health;" etc.

The contention of respondent is that there is no valid statute which authorizes or permits the condemnation of private property for the enlargement of this cemetery; that the act of 1869 authorized the formation of corporations to establish rural cemeteries, and provided for the care and maintenance of rural cemeteries so established, and only such as are so established.

In my judgment, although the point is not made in the briefs, the amendment of 1875 is, as applicable to rural cemeteries established by corporations formed under the act of 1869, unconstitutional and void, as it attempts to invoke the exercise of the power of eminent domain for the condemnation of lands at the instigation of a private corporation for private uses.

Eminent domain is that sovereign power vested in the people by which they can, for any public purpose, take possession of the property of any individual, upon just compensation paid to him. 6 Amer. & Eng. Cyc. Law, 511; 2 Kent, Com. 339. It has been defined by this Court to be—

"The rightful authority which exists in every sovereignty to control and regulate those rights of a public nature which pertain to its citizens in common, and to appropriate and control individual property for the public benefit, as the public safety, necessity, convenience, and welfare may demand." *Trombley v. Auditor General,* 23 Mich. 471, 474.

It was held in that case that the State had no author-
ity, by virtue of its eminent domain, to condemn private
lands for the purpose of turning them over to the United
States for the erection and maintenance of light-houses;
that the act which undertook to authorize the Governor
to do this was unconstitutional, as appropriating prop-
erty of individuals without due process of law; and that
the right of eminent domain in any sovereignty exists
only for its own purposes.

In *Ryerson v. Brown*, 35 Mich. 333, the Court say that,
in authorizing condemnation proceedings, it is essential
that the statute should require the use to be public in
fact,—in other words, that it should contain provisions
entitling the public to accommodations; that property
can never be condemned for private improvements, except
where they belong to a class that cannot usually exist
without the exercise of that power, and where the public
welfare requires that they shall be encouraged.

The exercise of the right of eminent domain is limited
to cases in which the public have an interest. *Cody v.
Rider*, 1 S. W. Rep. (Ky.), 2. It can never be just to take
property, under pretence of public benefit, which is not
needed by the public, however much it may advance
interests in which the public have no concern. *Paul v.
Detroit*, 32 Mich. 108, 119. The state has no right to
take the property of one citizen, and give it to another,
whether with or without compensation. 3 Washb. Real
Prop. 539; Tied. Lim. § 121*b*, p. 390. As has been said,
"When one man wants the property of another, the leg-
islature will not aid him in the acquisition." *Taylor v.
Porter*, 4 Hill, 147. See *Wilkinson v. Leland*, 2 Pet. 658;
*Heyward v. Mayor*, 3 N. Y. 324.

It was held in *People v. Salem*, 20 Mich. 452, that a
legislative act originating proceedings, by or in pursuance
of which individual property was to be taken under the

forms of taxation for the benefit of a private corporation, could not be justified as an exercise of legislative power. It was not, therefore, due process of law.

Mr. Cooley says:

"The public use implies a possession, occupation, and enjoyment of the land by the public at large, or by public agencies; and a due protection to the rights of private property will preclude the government from seizing it in the hands of the owner, and turning it over to another, on vague grounds of public benefit, to spring from the more profitable use to which the latter may devote it." Cooley, Const. Lim. (6th ed.), 654.

The use must be by the general public of the locality, and not by particular individuals. *McQuillen v. Hatton,* 42 Ohio St. 202; *Ross v. Davis,* 97 Ind. 79. A use which may be monopolized or absorbed by the few, and from which the general public may and must ultimately be excluded, is in no sense a public use. Land cannot be condemned for the purpose of enabling those instigating the proceedings to parcel it out to private individuals. Nor is a use which is not common to the public, and over which the state has surrendered that control and regulation necessary to secure such common use, a public use. The use of land for railways and turnpikes has been declared to be a public use, because it is open to all upon the payment of tolls, which are regulated by law, and the law requires such ways to be kept open for use by the public impartially.

As has been said, the question whether the use is public or private depends upon the right of the public to use the road, and to require the corporation, as a common carrier, to transport passengers or freight over the same. *Railroad Co. v. Railway Co.,* 41 Minn. 461 (43 N. W. Rep. 469); *De Camp v. Railroad Co.,* 47 N. J. Law, 47; *Phillips v. Watson,* 63 Iowa, 33; *Clarke v. Blackmar,* 47 N. Y. 156; Lewis, Em. Dom. § 166.

It has been held that condemnation proceedings cannot be resorted to, to take lands for the construction of spur tracks which are made for the accommodation of individual shippers. *In re Railway Co.*, 108 N. Y. 375 (15 N. E. Rep. 429); *In re Railroad Co.*, 110 Id. 119 (17 N. E. Rep. 678); *Railroad Co. v. Wiltse*, 116 Ill. 449 (6 N. E. Rep. 49); *Railroad Co. v. Iron Works*, 31 W. Va. 710 (8 S. E. Rep. 453).

To justify the condemnation of lands for a private corporation, not only must the purpose be one in which the public has an interest, but the state must have a voice in the manner in which the public may avail itself of that use. In *Gilmer v. Lime Point*, 18 Cal. 229, a public use is defined to be a use which concerns the whole community, as distinguished from a particular individual. The use which the public is to have of such property must be fixed and definite. The general public must have a right to a certain definite use of the private property, on terms and for charges fixed by law, and the owner of the property must be compelled by law to permit the general public to enjoy it. It will not suffice that the general prosperity of the community is promoted by the taking of private property from the owner, and transferring its title and control to a corporation, to be used by such corporation as its private property, uncontrolled by law as to its use. In other words, a use is private so long as the land is to remain under private ownership and control, and no right to its use, or to direct its management, is conferred upon the public. *In re Eureka Basin Co.*; 96 N. Y. 42. It is for the court to determine whether or not the use is a public one. *In re Cemetery Ass'n*, 66 N. Y. 569 (23 Amer. Rep. 86); *In re Railroad Co.*, 77 Id. 248; *Savannah v. Hancock*, 91 Mo. 54 (3 S. W. Rep. 215); *Railroad Co. v. Iron Works*, 31 W. Va. 710; Tied.

Lim. § 121*a*, p. 378; Cooley, Const. Lim. (6th ed.), 660.

This very question arose in *Cemetery Ass'n v. Beecher*, 53 Conn. 551 (5 Atl. Rep. 353), and the court say:

"The complaint alleges that the plaintiff is an association duly organized under the laws of this state for the purpose of establishing a burying ground; that it now owns one; that it desires to enlarge it; and that such enlargement is necessary and proper. There is no allegation that the land which it desires to take for such enlargement is for the public use in the sense indicated in this opinion. The demurrer, for the reason that the complaint does not set out any right in the plaintiff to acquire title to the land of the defendants otherwise than by their voluntary deed, must be sustained."

*In re Cemetery Ass'n*, 66 N. Y. 569, it was held that the statute authorizing rural cemetery associations to acquire land by exercising the right of eminent domain was unconstitutional and void, for the reason that the use was a private one. The court say:

"The land is to be vested in trustees, with power to divide into lots, and sell these lots to individual owners. It is difficult to see what interest the public will have in the lands or in their use. No right on the part of the public to buy lots or bury their dead there is secured. The prices at which the lots are to be sold are to be fixed by private agreement. The corporation is to be managed by trustees elected by the lot-owners. The lots, or the rights of the owners therein, are to descend as private property to the heirs of these owners; and by the act of 1874 the owners may, by leave of the courts, sell their lots, and put the proceeds in their pockets. The substantial right of enjoyment of the property is vested in the individual lot-owner; and the whole effect of the incorporation of these cemetery associations is to enable a number of private individuals to unite in purchasing property for their own use and that of their descendents as a place of burial, and to secure a permanent management of it through the instrumen-

tality of trustees appointed by themselves, and subject to no other control, with the privilege, when they cease to use their lots as a place of burial, to sell them, and receive the proceeds for their own benefit.

"It is argued that the property is to be used' as a place of burial, and that the burial of the dead is a public benefit, and, therefore, the use is public. But the answer to this argument is that the right of burial in these grounds is not vested in the public or in the public authorities, or subject to their control, but only in the individual lot-owners. If the fact that it is a benefit to the public that the dead should be buried is sufficient to make a. cemetery a public use, the legislature might authorize A. to take the land of B. for a private burial place of A. and his family. The fact that this land is taken for the benefit of a number of individuals for division among themselves or their grantees, for their own use as a cemetery, makes the case no stronger than if taken for the benefit of a single individual."

Precisely the same may be said of a corporation formed under the act in question. The lands owned by it are under the absolute control and dominion of the corporation. It may sell to A., and refuse to sell to B., and by its sale to A. it excludes every other person from that parcel. Not only may it sell to A. for burial purposes' but it may sell to any other person for any purpose, if, in its judgment, the lands are not occupied or required for burial purposes.

It may be urged that the petitioner here is not a private corporation; but I think that the entire amendment must fail. The original act provided for the formation of corporations to establish rural cemeteries. An amendment is made which is intended to confer certain powers upon these corporations, and also upon other corporations and agencies not alluded to in the original act. The power sought to be conferred upon the corporations organized under the original act cannot be exercised, because not warranted by the Constitution. It

is very clear that the only purpose had in view by the Legislature in attaching this amendment to this act was to confer this very power upon these corporations, and that the only purpose of the introduction by the amendment of these other corporations and agencies was to enable such agencies to exercise this power. Thus we have an act providing for the organization of a certain class of corporations, which is amended by conferring a power the exercise of which by the corporations so formed is prohibited by the Constitution, and, at the same time, the amendment introduces another class of corporations, which are created by virtue of other statutory provisions, for the purpose of clothing them with the very powers which cannot be exercised by the corporations formed under the original act. The amendment confers no additional powers upon the corporations created by the act, and it does not subject the other agencies introduced to any of the provisions thereof. Inapplicable to corporations formed under the act, the amendment is clearly irrelevant, and its incongruity apparent.

The petition filed in the court below must therefore be dismissed, with costs to respondent.

MORSE, LONG, and GRANT, JJ., concurred with McGRATH, J.

CHAMPLIN, C. J., concurred in the result.