PECK *v.* DETROIT UNITED RAILWAY.

1. CONSTITUTIONAL LAW—FRANCHISE—LIMITATION.
A franchise granted to a street railway corporation by the city of Detroit, reserving to the city the power of revocation at will, and providing for no definite term, is not void under section 29, art. 8, of the Constitution, whereby franchises for a longer period than 30 years are prohibited, since the grant cannot extend beyond the period limited by the Constitution.

2. SAME—MUNICIPAL OWNERSHIP—FRANCHISES.
Where the common council of the city of Detroit passed a franchise with a proviso that if the city should engage in the operation of street railways it should purchase the tracks and equipment of the portion covered by such franchise at a price to be determined by agreement or by arbitration, the proviso did not violate the Constitution by limiting the power of the council to revoke the resolution, and could not be construed as having that effect.

Appeal from Wayne; Mandell, J.   Submitted January 19, 1914.   (Docket No. 115.)   Decided May 4, 1914.

Bill by Barton L. Peck and another against the Detroit United Railway and city of Detroit for an injunction to restrain the construction of a line of street railway proposed to be built under a municipal franchise.   From an order sustaining defendants' demurrer complainants appeal.   Affirmed.

*Keena, Lightner, Oxtoby & Oxtoby,* for complainants.

*Hinton E. Spalding* and *John C. Donnelly,* for defendant Detroit United Railway.

*Richard I. Lawson,* for defendant city of Detroit.

The complainants, who are the owners of property abutting on Larchmont avenue, in the city of Detroit, filed this bill of complaint to restrain the construction of the proposed Junction Avenue Crosstown Line, which was to be built under authority of a resolution of the common council of that city, of date September 30, 1913. This action involves the validity of this resolution, which is as follows:

"Whereas, upon the terms of a temporary arrangement between the city of Detroit and the Detroit United Railway, made August 7, 1913 (see Journal Common Council, 1913, pages 1125, 1127), it was understood among other things that the Detroit United Railway would build a crosstown line on or near Junction avenue in connection with existing tracks upon particular lines or streets to be approved by the common council of said city, and that the work of construction should be started in the year 1913 and completed as soon as practical, and that such crosstown line or extension should be constructed and operated under the same terms, in substance, as the Hamilton Boulevard extension was constructed and is being operated (for the terms of said Hamilton Boulevard extension, see Journal Common Council, year 1911, pages 619, 620); and whereas, the said common council has determined upon and fixed the lines or streets upon which said crosstown or junction line or extension shall be located and constructed, to wit: Double track on Junction avenue from West Jefferson avenue to Michigan avenue; thence east on Michigan avenue to Thirty-third street; thence single track on Thirty-third street north to Van Court; thence on Van Court single track north to Larchmont; thence single track on Larchmont east to Grand River avenue; thence north on Grand River avenue double track to Allendale; thence west on Allendale single track to Thornton; thence south on Thornton single track to Thirty-fourth street; thence south on Thirty-fourth street single track to Michigan avenue; thence along Michigan double track to Junction avenue:

"Now, therefore, be it resolved that consent, permission and authority is hereby granted to the Detroit United Railway to enter upon said above-named

streets and avenues, and construct thereon a street railroad with all necessary side tracks, turnouts, switches, poles, wires and overhead power equipment and connect the same and operate its cars on said streets and avenues under the same terms and conditions under and by virtue of which it is operating that portion of its system constructed under authority of the said Hamilton Boulevard extension above referred to, except as herein otherwise provided.

"And be it further resolved and understood that if the city of Detroit shall be lawfully authorized to engage in the ownership and operation of street railways and shall so engage in such ownership and operation and shall desire to operate a part of its system over said streets and avenues it shall purchase the tracks and equipment constructed under this consent, together with the equipment necessarily furnished and acquired by said company for the operation of cars over and upon said streets and tracks and shall pay therefor a sum of money equal to the cost thereof, less depreciation to be ascertained at the time of the purchase thereof by the city, the same to be agreed upon by the parties hereto or if they should fail to agree the said sum to be determined by a board of arbitrators, one member of which shall be selected by the company, another by the mayor of the city of Detroit, and the third by the two thus chosen, and a decision of said board or a majority thereof shall be final; provided that the board of street railway commissioners of the city of Detroit or any member thereof shall have the supervision of the construction of said tracks and shall have free access to the books and vouchers of said company for the purpose of ascertaining the cost of said tracks and construction together with any other information, in whatever form it may be, which said street railway company may have which shows the cost of such construction.

"And be it further resolved, that in connection with this permit it is further understood that the company will carry passengers over said tracks for the following rates of fare:

"(1) Seven tickets for twenty-five cents, each of which tickets shall be good for a ride for any distance in one direction over said tracks hereby authorized.

"(2) Upon the payment of a fare at the rate of

seven tickets for twenty-five cents or a five-cent fare a transfer shall on demand be issued to any connecting or intersecting line according to the usual custom.

"(3) The existing provisions now in force on other lines for workingmen's tickets, so-called, eight tickets for twenty-five cents, also shall be in force on said line.

"(4) Single cash fare shall be five cents with now existing transfer privileges.

"Be it further resolved, that it is further understood that said railway company by its acceptance hereof gains no term rights in said streets and avenues by reason of installing the equipment herein permitted, and that the common council or the people of the city of Detroit at their pleasure or caprice may revoke the permit hereby granted and said company shall forthwith remove from the streets and avenues the property permitted to be placed therein by it under this grant.

"It is further understood and agreed between said city of Detroit, said common council and said railway company that the making of this grant and the acceptance thereof by said company shall not be deemed to be a waiver of any rights of said city of Detroit or of said railway company with reference to the construction, maintenance and operation of said line of railway or street railway track now owned, maintained and operated in said city and that each party hereto saves and reserves all its rights whatever they may be the same as though this grant had not been made and accepted.

"Be it further resolved, that the preamble to this resolution be, and the same is hereby constituted, a part and parcel of this resolution and it is so understood.

"And be it further resolved, that this permit is void if not accepted within ten days after its approval by the mayor."

It is contended that this resolution is void because it is in conflict with section 29, article 8, of the State Constitution, which provides:

"SEC. 29.  No franchise or license shall be granted by any municipality of this State for a longer period than thirty years"—

and is also in conflict with section 25, article 8, which provides:

"SEC. 25.   No city or village shall have power to abridge the right of elective franchise, to loan its credit, nor to assess, levy or collect any tax or assessment for other than a public purpose.   Nor shall any city or village acquire any public utility or grant any public utility franchise which is not subject to revocation at the will of the city or village, unless such proposition shall have first received the affirmative vote of three-fifths of the electors of such city or village voting thereon at a regular or special municipal election; and upon such proposition women taxpayers having the qualification of male electors shall be entitled to vote."

A decree was entered sustaining the demurrers filed by the defendants.   Complainants elected to stand on the bill of complaint without amendment, as it set forth all the facts in the case, and the decree accordingly dismissed the bill.   From this decree, complainants have appealed.

KUHN, J. *(after stating the facts).*   It is the complainants' contention that under section 29, article 8, of the Constitution, the grant in question is invalid, because it contains no maximum term limit beyond which it cannot run, although the right of revocation is reserved to the grantor.   What is the grant in question?   The most that can be claimed for it is that it is a revocable right.   It is immaterial whether it is termed a grant, license, franchise, or permit.   Its important feature in this discussion is that whatever it is termed, it is revocable at the will of the city, whenever the public interest requires its termination.   By its terms this is to be determined by the common council or the people of the city of Detroit, at their pleasure or caprice.   The resolution clearly provides that no term right shall be acquired by the railway company because of the acceptance of the grant by it, and by virtue of the provisions of said section 29, article

8, of the Constitution, which is a clear limitation on the power to grant franchises or licenses, this grant of power could not extend beyond the period of 30 years fixed by the section, even if it should not be revoked by the granting power before the expiration of that time. In the absence of a time limitation in the grant, it must be assumed that it cannot extend beyond the term fixed by the Constitution. *Boise, etc., Water Co.* v. *Boise City,* 230 U. S. 84 (33 Sup. Ct. 997). Not being a grant for a longer period than 30 years, which is prohibited by the Constitution, and, complying with section 25 of article 8 in that it is "subject to revocation at the will of the city," we are clearly of the opinion that the resolution making the grant was not in violation of any constitutional prohibition.

It is also contended that the council's resolution should be held void because it contains a proviso that, in case the city shall engage in municipal ownership and operation of street railways, and shall desire to operate on the streets mentioned in the resolution, it shall purchase the tracks and equipment therefor at a price to be fixed by agreement or arbitration. This provision cannot be construed to be a limitation upon the power to revoke the .permit. This power can be exercised without complying with any conditions. It can be exercised at the will of the common council or the city, and is independent of any other provision. The question of whether or not the city could be compelled to purchase the property and equipment of the railroad as provided for in the resolution, in case the right of revocation is exercised, is a question not involved here.

The decree of the court below dismissing the bill of complaint is affirmed, with costs to defendants.

MCALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.