DETROIT INTERNATIONAL BRIDGE CO. *v.* AMERICAN SEED CO.

1. HIGHWAYS AND STREETS—HIGHWAY IS PUBLIC WAY.

A "highway" is a public way for use of the public in general, for passage and traffic, without distinction, and expression "private highway" is a misnomer, and "public highway" is tautology.

On power of eminent domain to take land for bridges, see annotation in 22 L. R. A. (N. S.) 135.

2. Eminent Domain—Toll Road or Bridge Established by Public
   Authority is Highway.
   A toll road or bridge, if established by public authority, is a
   highway, and land may be taken for it under power of emi-
   nent domain.

3. Same—Land Taken for Bridge Approaches is Dedicated to
   Public Purpose.
   Since a bridge and its approaches form one structure, land taken
   for approaches is as fully dedicated to the public purpose as
   the bridge itself.

4. Same—Statutes—Act Not Unconstitutional.
   Act No. 84, Pub. Acts 1921, pt. 2, chap. 1, § 2, as amended by
   Act No. 232, Pub. Acts 1925, and Act No. 335, Pub. Acts 1927,
   giving to corporations organized for purpose of constructing,
   owning, or operating any highway bridge across any stream
   forming part of State boundary power to condemn land is not
   unconstitutional because use is not restricted to public pur-
   poses, since it does not authorize taking for private purposes
   or for both public and private purposes, and obligation to pre-
   serve public purpose is implied from acceptance of the right;
   words ''deemed necessary for the purposes of such corpora-
   tion'' referring back to public purpose of ''constructing,
   owning, or operating any highway bridge.''

5. Same—International Bridge Not Exclusively Federal Pur-
   pose.
   Contention that condemnation of land under State statute for
   highway bridge over stream forming part of international
   boundary is unlawful because the bridge, being for commerce
   with another nation, is exclusively a Federal purpose, is with-
   out merit, since the project is so plainly both a State and
   National purpose as to authorize condemnation of lands for
   it by either State or Federal government.

6. Quo Warranto—State May Compel Corporation to Fulfil
   Charter Obligations.
   Through quo warranto proceedings State could compel corpora-
   tion organized under State laws to build, own, or operate
   highway bridge over stream forming part of international
   boundary to fulfil its charter obligations.

7. Commerce—Regulation of Tolls for International Bridge.
   The State may regulate tolls for transit over international high-
   way bridge unless Congress undertakes to do so.

8. EMINENT DOMAIN—LEGISLATURE MAY IMPOSE CONDITIONS UPON ITS EXERCISE.

As eminent domain is an attribute of sovereignty, the legislature may impose any conditions it pleases upon its exercise.

9. SAME—GRANT BY STATE WITHOUT RETAINING SUPERVISION ADOPTS FEDERAL SUPERVISION.

Where congress granted permission to construct international highway bridge (41 Stat. 1439), subject to Federal bridge act (33 USCA § 494), and provided that secretary of war should prescribe reasonable rates of toll, State by granting power to corporation to build such bridge and condemn land therefor without retaining supervision over operation of bridge and tolls in effect adopted the secretary of war as its agent to fix tolls, and if Federal government withdraws its regulation, State may step in.

10. SAME—COURT DETERMINES WHETHER USE IS PUBLIC—LEGISLATURE FIXES CONDITIONS OF USE OF EMINENT DOMAIN.

While it is for the court to determine whether a use is public, the conditions of the exercise of power of eminent domain for a use undeniably public, and the measures necessary to preserve the public rights, are for the legislature.

11. STATUTES—EMINENT DOMAIN—AMENDING STATUTE NOT UNCONSTITUTIONAL—CONSTITUTIONAL LAW—TITLE OF ACT.

The title of Act No. 232, Pub. Acts 1925, entitled ''An act to amend section two of chapter one of part two of Act number eighty-four of the public acts of nineteen hundred twenty-one, entitled,'' followed by title of original act in full, as amended, was sufficient, although power of eminent domain was not specifically mentioned, since object of amendment was germane to original act and sections amended.

12. BRIDGES—MUNICIPAL CORPORATIONS — ORDINANCES — CONSTITUTIONAL LAW.

City ordinance containing no time limit granting permission for construction and operation of international highway bridge is not invalid as granting franchise or license beyond constitutional term of 30 years (Article 8, § 29), since it is at least a valid license until repealed or revoked, whether it is valid grant for constitutional period or not.

13. EMINENT DOMAIN—FORM OF AWARD—ITEMIZATION OF AWARD NOT REQUIRED.

Where, in condemnation proceedings, jury signed plaintiff's form of report dividing damages into $80,000 for land and nothing

for business damage, and also signed defendant's form finding $80,000 for land including consequential and business damages, court did not err in entering judgment for that amount and expressly adopting defendant's. form in its order, since the forms were not inconsistent in matter' of substance, and under testimony the jury need not or could have found business damage, and statute does not prescribe form of report or require itemization of damages, but practice is not to be commended.

14. SAME—OFFER TO PURCHASE BONA FIDE.
     Plaintiff's offer to purchase land *held, bona fide,* and sufficient to create necessity for condemnation.

15. SAME—TENDER OF AWARD—WAIVER AND ABANDONMENT—INTENT.
     Tender of certified checks in payment of award in condemnation proceedings instead of money as required by 2 Comp. Laws 1915, § 8257, did not constitute waiver and abandonment of proceedings within meaning of statute, where owner knew that no abandonment was intended, no objection was raised to form of tender, and it was unequivocally refused because owner intended to appeal; waiver and abandonment implying intention.

Appeal from Wayne; Webster (Arthur), J. Submitted October 22, 1929. (Docket No. 109, Calendar No. 33,946.) Decided January 24, 1930.

Condemnation proceedings by Detroit International Bridge Company, a Michigan corporation, against American Seed Company and Peninsular State Bank (mortgagee) for land to be used in constructing a bridge across the Detroit river. From an order confirming award of jury, defendant American Seed Company appeals. Affirmed.

*Oxtoby, Robison & Hull,* for appellant.

*Sherman D. Callender* and *Milton W. Kleckner* (*Stevenson, Butzel, Eaman & Long,* of counsel), for appellee.

FEAD, J. This is review of condemnation proceedings instituted by the Detroit International Bridge

Company, hereafter called plaintiff, to acquire lands of the American Seed Company, designated as defendant, for an international bridge, which has since been constructed and opened from the city of Detroit, Michigan, to the town of Sandwich, Ontario. Defendant has appealed from an order of condemnation. The Peninsular State Bank is interested only as mortgagee.

Plaintiff was organized June 20, 1927, under Act No. 84, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 9053 [1] *et seq.*), the corporation code, as a corporation for pecuniary profit, but with nominal capital, for the purpose of "constructing, owning and/or operating a highway bridge across the Detroit river from Detroit, Michigan, to Sandwich, Province of Ontario, Canada."

On August 4, 1927, plaintiff amended its articles to increase its capital stock and to change its corporate purposes to read:

"To construct, own and/or operate a highway bridge across the Detroit river from Detroit, Michigan, to Sandwich, Province of Ontario, Canada, and the approaches thereto.

"To maintain and operate such bridge and the approaches thereto for the use of vehicular and pedestrian traffic, and to charge and collect tolls for such use."

It claimed the right of eminent domain under part 2, chap. 1, § 2, Act No. 84, Pub. Acts 1921, as amended by Act No. 232, Pub. Acts 1925, and Act No. 335, Pub. Acts 1927. The only change made in 1927 was in adding the words "or tunnel" and "or under" to the act of 1925. The pertinent part of the section, with the amendment italicized, is:

"Every corporation shall have power, unless expressly prohibited by law, to purchase, hold and

convey all such real and personal estate as the purposes of the corporation may require, and all other real and personal estate which shall have been, *bona fide,* conveyed or mortgaged to said corporation by way of security or in satisfaction of debts. *Any corporation organized for the purpose of constructing, owning or operating any highway bridge or tunnel, across or under any river, stream or other waterway forming a part of the boundary between this State and any other State or country, shall, in addition to all other powers by this act conferred, have the power to condemn any and all real estate, or interest therein, or pertaining thereto deemed necessary for the purposes of such corporation, when no mutual agreement can be reached for the purchase thereof, and in which condemnation said corporation shall proceed as in the condemnation of lands or franchises for railroad purposes under chapter one hundred fifty-seven of the compiled laws of nineteen hundred fifteen, as amended."*

Permission to construct the bridge was originally granted by act of congress of March 4, 1921 (41 Stat. 1439), to the American Transit Company, a Nevada corporation, its successors and assigns. The act granted no power of eminent domain. The permission was made subject to the Federal bridge act of March 23, 1906 (33 USCA § 494), which provides:

"If tolls shall be charged for the transit over any bridge constructed under the provisions of this act, of engines, cars, street cars, wagons, carriages, vehicles, animals, foot passengers, or other passengers, such tolls shall be reasonable and just, and the secretary of war may, at any time, and from time to time, prescribe the reasonable rates of toll for such transit over such bridge, and the rates so prescribed shall be the legal rates and shall be the rates demanded and received for such transit."

The rights of the American Transit Company were assigned to plaintiff in August, 1927. Proper authorization by the Canadian government was granted to the Canadian Transit Company, incorporated May 3, 1921, all the stock of which is owned by plaintiff.

Defendant contends the amendments of 1925 and 1927 to the corporation code, granting right of eminent domain, are unconstitutional on several grounds, which we summarize:

1. The use is not restricted to public purposes.

When employed in a statute, there is no doubt of the meaning of the word "highway" unless, as sometimes happens, the context plainly shows a perversion of use. The expression "private highway" is a misnomer and "public highway" is tautology. A highway is a public way for the use of the public in general, for passage and traffic, without distinction. *Macomber* v. *Nichols,* 34 Mich. 212 (22 Am. Rep. 522); *Flint & Pere Marquette R. Co.* v. *Gordon,* 41 Mich. 420; *Burdick* v. *Harbor Springs Lumber Co.,* 167 Mich. 673; 1 Elliot on Roads and Streets (4th Ed.), p. 1; *Gorham* v. *Johnson,* 157 Mich. 433; 29 C. J. p. 364; 4 R. C. L. p. 195.

A toll road or bridge, if established by public authority, is a highway, and land may be taken for it under the power of eminent domain. 1 Lewis, Eminent Domain (3d Ed.), p. 522; 38 Cyc. p. 363; 22 L. R. A. (N. S.) 135, note.

The bridge and its approaches form one structure. As such, it constitutes a union of highways of Michigan and of Ontario and converts them into one uninterrupted public road. Land taken for the approaches is as fully dedicated to the public purpose as the bridge itself.

The statute does not authorize the taking for private purposes, or for both public and private purposes, as in *Berrien Springs Water-Power Co.* v. *Berrien Circuit Judge,* 133 Mich. 48 (103 Am. St. Rep. 438); *Ryerson* v. *Brown,* 35 Mich. 333 (24 Am. Rep. 564); *Board of Health* v. *Van Hoesen,* 87 Mich. 533, relied on by defendant. The taking of property "deemed necessary for the purposes of such corporation," as provided in the statute, plainly has reference back to the public purpose of "constructing, owning or operating any highway bridge." *Swan* v. *Williams,* 2 Mich. 427.

It is true that hereafter plaintiff may amend its charter but, whatever the amendment, it cannot devote the property taken under the power of eminent domain to a private use. No express restrictions in the statute are required to preserve the public purpose. The obligation is implied from acceptance of the right. As was said in *Swan* v. *Williams, supra:*

"For the purpose of carrying out and effectuating the general purpose, the company may be regarded, as we have shown, as a trustee or agent—entitled to certain rights and immunities, upon a faithful observance upon its part, of the objects and terms of its creation. The right to purchase and hold lands for the purposes of the road, being a right delegated in virtue of the eminent domain of the government, and derogatory to those of the citizen whose property is condemned, must be construed as conferring no right to hold the property in derogation of the purposes for which it was taken."

See, also, *Holt* v. *Antrim,* 64 N. H. 284 (9 Atl. 389); 1 Lewis, Eminent Domain (3d Ed.), § 313.

Plaintiff, in exercising the power, irrevocably bound itself to the statutory public use of the property. As is conceded by counsel for plaintiff, it did

not acquire the fee. It took only an easement for public purposes, and failure of use for such purposes would work a reverter of the land. *Flint & Pere Marquette R. Co.* v. *Rich,* 91 Mich. 293.

2. The State cannot lawfully delegate exercise of its sovereign power of eminent domain to plaintiff.

(a) Because the bridge, being for commerce with another nation, is exclusively a Federal purpose.

In *People, ex rel. Trombley,* v. *Humphrey, Auditor General,* 23 Mich. 471 (9 Am. Rep. 94), it was held that the State could not condemn lands for a purely National project, such as a lighthouse, as there was a want of necessity for the exercise of State power, the Federal government having full right to condemn for its own purposes. Counsel agree that the United States may authorize a corporation to condemn lands in a State for an interstate or international bridge, with or without the consent of the State. *Kohl* v. *United States,* 91 U. S. 367; *United States* v. *Jones,* 109 U. S. 513 (3 Sup. Ct. 346). And defendant contends the Federal power was held exclusive, in case of such a bridge, in *Latinette* v. *City of St. Louis,* 120 C. C. A. 638 (201 Fed. 676).

The *Latinette Case* does not sustain defendant's contention. In the respect claimed, the court merely observed, in effect, that while congress could properly refer to the State law the procedure for determination of compensation, it could not, by like reference, work a delegation of any of its own or of the State power of eminent domain, but that the power must be conferred, if at all, by direct grant. Clearly, one government cannot authorize right of exercise of any part of the sovereignty of another.

In a large number of instances cited by counsel, States have authorized condemnation of lands for interstate bridges and ferries. None pass upon the

issue here. Apparently the question of want of power in the State has not before been raised.

The bridge is not exclusively a National or State purpose. The Federal government is interested in it by virtue of its constitutional authority over navigation, interstate and foreign commerce and post roads. But it did not originate, adopt, nor aid the project. Its function is merely supervisory and permissive. The State is interested in the extension of its highway system to the State boundary in the Detroit river, an indubitably State purpose, and is the source of the power to construct the bridge.

"The act (bridge act) does not make congress the source of the right to build but assumes that the right comes from another source, that is, the State. It merely subjects the right supposed to have been obtained from there to the further condition of getting from congress consent to action upon the grant." *International Bridge Co.* v. *New York,* 254 U. S. 126 (41 Sup. Ct. 56).

If, because of control over foreign commerce by congress, the bridge should be held a purely National purpose, in the establishment of which the eminent domain of the State cannot be employed, then, by the same token, the State could not use the power to complete any road to the State line beyond the needs of intrastate traffic nor authorize its use by a transportation company engaged in purely interstate commerce. The statement of the proposition seems to carry its own answer.

We think the project is so plainly both a State and National purpose as to authorize condemnation of lands for it by either government.

(b) Because the State retains no power or supervision over operation of the bridge and tolls.

This contention is based upon the proposition that, to justify delegation of the power of eminent

domain, the State must retain such control as will enable it to compel devotion of the bridge to public use, independently of the will of plaintiff. *People v. Salem,* 20 Mich. 452 (4 Am. Rep. 400); *Board of Health* v. *Van Hoesen, supra; Berrien Springs Water-Power Co.* v. *Berrien Circuit Judge, supra.*

Counsel agree that the State retains police power over the bridge. Through *quo warranto* proceedings, the State undoubtedly could compel plaintiff to fulfil its charter obligations. *Swan* v. *Williams, supra.* Defendant has not suggested any manner in which the control of the State necessary to insure public use is wanting, except in respect of the regulation of tolls.

While for a time there was some uncertainty (*Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196 [5 Sup. Ct. 826]; *Covington & Cincinnati Bridge Co.* v. *Kentucky,* 154 U. S. 204 [14 Sup. Ct. 1087]), it is now settled that the State may regulate the tolls unless congress undertakes to do so. *Port Richmond & Bergen Point Ferry Co.* v. *Hudson County,* 234 U. S. 317 (34 Sup. Ct. 821); *Mayor of Vidalia* v. *McNeeley,* 274 U. S. 676 (47 Sup. Ct. 758). The tolls, then, are under control of either the National or State government.

As eminent domain is an attribute of sovereignty, the legislature could have imposed any conditions it pleased upon its exercise. In granting the power to plaintiff, it must be assumed the legislature knew the tolls would be under supervision of the secretary of war by virtue of the act of congress. The purpose of the bridge being inherently public, the failure to attach special conditions to the grant of power demonstrates that the legislature considered the supervision of tolls and the determination of their reasonableness by the Federal government sufficient to insure protection of the public from extortion. In ef-

fect, the State adopted the secretary of war as its agent to fix the tolls. If the Federal government withdraws its regulation, the State may step in. While it is for the court to determine whether a use is public (*Board of Health* v. *Van Hoesen, supra*), the conditions of the exercise of the power for a use undeniably public, and the measures necessary to preserve the public rights, are for the legislature. *In the Matter of Peter Townsend,* 39 N. Y. 171. The rule might be different where the project is essentially private but is invested with a public interest and conditions are necessary to create and preserve the public interest.

3. Because the titles to the amendatory acts of 1925 and 1927 do not specifically mention the power of eminent domain. The title to the 1925 act reads:

"An act to amend section two of chapter one of part two of act number eighty-four of the public acts of nineteen hundred twenty-one, entitled, (here follows the title of the original act in full) as amended."

The object of the amendment was germane to the original act and to the sections amended, and the title is sufficient. *Westgate* v. *Township of Adrian,* 161 Mich. 333; *C. H. Little Co.* v. *L. P. Hazen Co.,* 185 Mich. 316.

The act is constitutional.

The city of Detroit, by ordinance containing no time limit, granted permission for the construction and operation of the bridge. Defendant contends the ordinance is invalid as granting a franchise or license beyond the term of 30 years contrary to article 8, § 29, State Constitution. Whether the ordinance is a valid grant for the constitutional period (*Peck* v. *Railway,* 180 Mich. 343; *Boise Water Co.* v. *Boise City,* 230 U. S. 84 [33 Sup. Ct. 997]), need not be determined. It is at least a valid license until re-

pealed or revoked, and, as such, is sufficient on this issue.

Two forms of report drafted by counsel were submitted to and returned signed by all the jurors. On plaintiff's form the damages were divided, and the jury found $80,000 for the land and nothing for business damage. On defendant's form the jury found $80,000 for the land, including consequential and business damages. The court entered judgment in that amount and expressly adopted defendant's form in its order. Under the testimony, the jury need not or could have found business damage. The statute does not prescribe the form of report nor require itemization of damages nor need the jury report the items. The essentials of findings of necessity and amount of compensation were in both forms. They were not inconsistent in matter of substance. The practice is not to be commended, but, under the circumstances, defendant was not injured and the court did not err in entering judgment.

For a long time before these proceedings were commenced, plaintiff, its assignors and agents, tried to purchase the property from defendant. Defendant refused to sell or even to name a price for the premises, except in conjunction with two other lots, and finally informed plaintiff that further negotiations for the one lot condemned would be fruitless. Even after that plaintiff made a specific offer. The attempt to purchase was *bona fide* and sufficient to create a necessity for condemnation.

Section 8257, 2 Comp. Laws 1915, provides that on payment or deposit of the moneys adjudged, the condemnor may take possession, but if the sums are not paid or deposited within 60 days after confirmation, "such failure or neglect shall be deemed as a waiver and abandonment of the proceedings to acquire any rights in said land or property."

Plaintiff tendered certified checks instead of money. The tender was unequivocally refused because defendant proposed to appeal. No objection was made to the form of tender. Plaintiff deposited the certified checks, notified defendant it had deposited the sums ordered, and defendant commenced a suit in chancery to restrain plaintiff from taking possession, setting up a large number of grounds, but making no objection to the form of tender or deposit. The court denied an injunction. Plaintiff took possession and erected on the premises a support for the bridge approach. Some 10 months later defendant filed a motion in this court to dismiss the whole condemnation proceedings because the deposit was not in money. Had defendant raised the point in the suit to resist entry, plaintiff would have deposited the money, as it offers to do in this court. Waiver and abandonment imply intention. Plaintiff did not intend to abandon the proceedings, as defendant well knew. It is not claimed the checks were not good at all times. The purpose of the statute to assure payment of the judgment before possession was taken was fully subserved. The motion is denied.

The other contentions of defendant have been examined, are untenable, and do not merit discussion.

Upon plaintiff depositing money as provided in the order of confirmation, within ten days, the judgment will be affirmed, with costs.

Wiest, C. J., and Butzel, Clark, Potter, Sharpe, and North, JJ., concurred. McDonald, J., took no part in this decision.